**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND**
(Northern Division)

| | | |
|---|---|---|
| DAVID SYDNEY, *et al.*, | * | |
| Plaintiffs, | * | |
| v. | * | Civil Action No.: 22-cv-01142-GLR |
| CEDAR REALTY TRUST, INC., *et al.* | * | |
| Defendants. | * | |

\* \* \* \* \* \* \* \* \* \* \* \* \*

**OPPOSITION OF DEFENDANT WHEELER REAL ESTATE INVESTMENT TRUST, INC. TO PLAINTIFFS' MOTION FOR A PRELIMINARY INJUNCTION**

Defendant Wheeler Real Estate Investment Trust, Inc. ("Wheeler") respectfully submits this opposition to plaintiffs' motion for a preliminary injunction.[1] As more fully set forth herein, there is simply no basis to enjoin the planned merger between Wheeler and Cedar Realty Trust, Inc. ("Cedar").[2]

Wheeler stock is publicly traded. Wheeler has entered into an agreement (the "Merger Agreement") to acquire Cedar in a corporate merger transaction after Cedar sells certain of its assets and distributes the net proceeds from that asset sale to its common stockholders. As a result of that merger transaction, Wheeler will own the interest in Cedar previously owned by

---

[1] The parties have stipulated that plaintiffs' memorandum of law in support of a TRO (ECF 13-1) will be treated as their memorandum in support of a preliminary injunction. (ECF 23 ¶3).

[2] Wheeler also believes that there is no basis to enjoin Cedar from distributing to its common stockholders the net proceeds it receives from selling some of its assets prior to the merger.

Cedar's common stockholders. The plaintiffs do not contend that the acquisition of Cedar by Wheeler is anything but an arms-length corporate merger.[3]

Cedar has two classes of preferred stockholders. Cedar's preferred stock is publicly traded. Following the merger, Cedar's preferred stockholders will continue to own their preferred stock in Cedar, Cedar's preferred stock will continue to be publicly traded and Cedar will continue to make required filings with the Securities and Exchange Commission ("SEC"). Cedar's Articles Supplementary setting forth the rights of Cedar's preferred stockholders will be unaffected by the merger. Cedar will remain an operating real estate company after the merger.

The plaintiffs purportedly own Cedar preferred stock. In their motion seeking preliminary injunctive relief, the plaintiffs assert that Cedar's agreement to sell a portion of its assets to a third party and thereafter consummate the corporate merger with Wheeler triggers either their limited conversion rights or their liquidation preference under Cedar's Articles Supplementary. The plaintiffs allege that Cedar is breaching its Articles Supplementary because Cedar does not agree that the transactions trigger either the preferred stockholders' limited conversion rights or their liquidation preference. The plaintiffs ask the Court to enjoin the distribution of the proceeds from Cedar's sale of a portion of its assets to a third party and to enjoin the merger.

As set forth in Cedar's memorandum opposing the motion for a preliminary injunction, which Wheeler incorporates by reference, the plaintiffs' assertions are incorrect. None of the merger transaction, the asset sale or the distribution of the net proceeds from the asset sale is, individually or collectively, a liquidation of Cedar. Cedar will remain an operating real estate

---

[3] Plaintiffs make baseless and disparaging claims about Wheeler in their motion. (ECF 13-1, at 6-11, 23-24.) Wheeler vehemently disputes those claims, which are, in any event, irrelevant to the resolution of plaintiffs' motion.

company after the merger.  It will have fewer assets than it once did, and its common stock will no longer be publicly traded, but it will continue to own and operate commercial real estate and its preferred stock will remain outstanding and publicly traded. Under any definition, there is no liquidation.  The sale by Cedar of some of its assets to a third party prior to the merger does not change the fact that Cedar is not being liquidated.  Nor will the so-called conversion rights of Cedar's preferred stockholders be triggered by the merger.  What plaintiffs denote as the conversion right of Cedar's preferred stockholders is a very limited right that exists only in the event of a change of control where neither Cedar nor the acquiring company have publicly traded common stock.  Here, the common stock of Wheeler, the acquiring company, is and will continue to be publicly traded. Accordingly, the merger transaction in no way breaches the contractual rights of Cedar's preferred stockholders, and that should be the end of the story.

The plaintiffs baldly assert in what they call the "Factual Background" section of their memorandum supporting the preliminary injunction motion that neither Cedar nor Wheeler expected the value of the properties Cedar will continue to own after the merger to be sufficient to satisfy both the debt against those properties and the liquidation preference the preferred shareholders would be entitled to receive if a decision was ever made to liquidate Cedar. The plaintiffs have offered only speculation for those conclusory statements.

Moreover, the focus on liquidation value after the merger ignores the reason for the merger.  There has not been (and could not be) any suggestion that Wheeler intends to liquidate Cedar.  The plaintiffs' myopic and speculative focus on a hypothetical liquidation obscures the true value to Wheeler of acquiring Cedar and the true value of the acquisition to Cedar's preferred stockholders who retain their dividend and liquidation preferences under Cedar's Articles Supplementary.

Under Cedar's Articles Supplementary (which will remain in place after the merger), Wheeler cannot pay itself (as the owner of Cedar's common stock) dividends from Cedar unless the dividend preference held by Cedar's preferred stockholders is satisfied. Why would Wheeler have any incentive to acquire Cedar if it didn't think the cash flow from the investment would be sufficient to pay Cedar's preferred stockholders their dividend preference and still generate a profit for Wheeler? Wheeler is acquiring Cedar to make a profit – a profit it can only receive if the preferred shareholders of Cedar first receive their dividend preference.

Plaintiffs' memorandum of law supporting injunctive relief does not address any legal claims against Wheeler. In their Amended Complaint, plaintiffs allege that Wheeler tortiously interfered with the conversion or liquidation rights of Cedar's preferred stockholders by entering into the merger agreement. The plaintiffs' allegations against Wheeler cannot stand absent a finding that Cedar breached its contractual obligations, a showing the plaintiffs cannot make. Because the plaintiffs cannot establish a likelihood of success on its assertion that Cedar breached its Articles Supplementary, Wheeler cannot have interfered with the contractual rights of Cedar's stockholders under Cedar's Articles Supplementary.

Even if that was not the case, Cedar has not alleged actionable claims The elements of a claim for tortious interference with an existing contract have long been established in Maryland. The tort has five elements: (1) existence of a contract between plaintiff and a third party; (2) defendant's knowledge of that contract; (3) defendant's intentional interference with that contract; (4) breach of that contract by the third party; and (5) resulting damages to the plaintiff. *Fowler v. Printers II, Inc.*, 89 Md.App. 448, 466 (1991). The intentional interference element requires both intentional and improper conduct on the part of the defendant for the purpose of interfering with the contract. Restatement (Second) of Torts § 767 comment a. The Restatement

4

(Third) of Torts § 17 provides that interference with an existing contract is wrongful under any of three circumstances, none of which are alleged here: "(a) the defendant acted for the purpose of appropriating the benefits of the plaintiff's contract; (b) the defendant's conduct constituted an independent and intentional legal wrong; or (c) the defendant engaged in the conduct for the sole purpose of causing harm to the plaintiff."  The plaintiffs have not even tried to allege any independently wrongful conduct by Wheeler.  The only allegations in the Amended Complaint are that Wheeler knew of the Articles Supplementary and interfered with the contract "by agreeing to enter into the merger transaction." (ECF 4, Count II ¶ 185; Count IV ¶ 197).  Mere knowledge of Cedar's governing documents cannot amount to intentional and improper interference with whatever rights Cedar's preferred stockholders have under the Articles Supplementary.

It makes no sense (and is therefore not plausible) that Wheeler's motivation in deciding to acquire Cedar and its retained real estate assets (after Cedar's sale of other assets to a third party) was to harm Cedar's preferred stockholders.  There is no plausible argument that Wheeler's conduct was aimed at or intended to disrupt the contractual relationship between Cedar and its preferred stockholders. And Wheeler could not misappropriate the benefits of Cedar's preferred stockholders because Cedar's preferred stockholders' dividend and liquidation preferences under the Articles Supplementary will remain in effect following the merger. Finally, a cognizable tortious interference claim does not exist unless the alleged interference caused the alleged breach of the contract.  The plaintiffs do not allege that Wheeler did anything to cause Cedar to allegedly breach its Articles Supplementary.  Accordingly, the plaintiffs have failed to state a claim for intentional breach of contract against Wheeler.  *Hastings v. Ocwen Loan Servicing,* LLC, 2015 WL 433712 (D. Md. Feb. 2, 2015) at * 4-5 (dismissing intentional

5

interference claim because the plaintiffs did not allege that either party breached the contract as a result of the alleged interference). The plaintiffs simply cannot show any likelihood of success on the intentional interference with contract claims they assert against Wheeler in the Amended Complaint, but do not even raise in their briefing in support of an injunction.

The plaintiffs also assert in the Amended Complaint (but again not in their brief supporting preliminary injunctive relief) that Wheeler aided and abetted a breach of fiduciary duty purportedly owed by Cedar's Board of Directors to Cedar's preferred stockholders. As Cedar persuasively demonstrates in its opposition, there is no fiduciary duty owed to the preferred stockholders. Their rights are contractual. In the absence of any fiduciary duty, there can be no claim for aiding and abetting a breach of fiduciary duty. *Alleco, Inc. v. Harry & Jeanette Weinberg Foundation, Inc.*, 340 Md. 176 (1995)(an aiding and abetting claim exists only where another person has acted tortiously).

Even if, *arguendo*, the Cedar Board owed a fiduciary duty to Cedar's preferred stockholders (they do not), the plaintiffs have not alleged how Wheeler aided and abetted any breach of that hypothetical duty. The only allegation relating to Wheeler allegedly aiding and abetting Cedar in the Amended complaint is that Wheeler entered into the merger agreement with Cedar. (ECF 4, Count VI ¶ 206). Wheeler negotiated an arms-length merger transaction to acquire the common stock of Cedar. There is no allegation that Wheeler did anything more than take actions normally attendant to acquisition of a public company. In the absence of something more, such normal business conduct cannot give rise to an aiding and abetting claim. The plaintiffs have not and cannot allege that Wheeler somehow participated in any alleged breach of fiduciary duty. Accordingly, the plaintiffs simply cannot show any likelihood of success on the

6

aiding and abetting claim they assert against Wheeler in the Amended Complaint, but do not even raise in their briefing in support of an injunction.

## CONCLUSION

For the reasons set forth herein, and in Cedar's memorandum, the Court should deny the request for preliminary injunctive relief.


*/s/ Jerrold A. Thrope*
Jerrold A. Thrope (Bar No. 01376)
Gordon Feinblatt LLC
1001 Fleet Street, Suite 700
Baltimore, Maryland  21202
(410) 576-4295 (Phone/Fax)
jthrope@gfrlaw.com


*/s/ Elizabeth G. Clark*
Elizabeth G. Clark
Alston & Bird
90 Park Avenue
15th Floor
New York, NY  10016-1387
(212) 210-9400 (Phone)
(212) 210-9444 (Fax)
Elizabeth.Clark@alston.com
*admitted pro hac vice*

*Attorneys for Defendant*
*Wheeler Real Estate Investment Trust, Inc.*

9480867.8 57161/148694 5/25/22

## **CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on this 25th day of May, 2022, a copy of the foregoing Opposition of Wheeler Real Estate Investment Trust, Inc. to Motion for Preliminary Injunction was electronically filed and served through the Court's CM/ECF system.

                                                  */s/ Jerrold A. Thrope*
                                                  Jerrold A. Thrope

9480867.8 57161/148694 5/25/22