IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
(Northern Division)

| | | |
|---|---|---|
| DAVID SYDNEY, *et al.*, | * | |
| Plaintiffs, | * | |
| v. | * | Civil Action No.: 22-cv-01142-GLR |
| CEDAR REALTY TRUST, INC., *et al.* | * | |
| Defendants. | * | |

\*  \*  \*  \*  \*  \*  \*  \*  \*  \*  \*  \*  \*  \*

## OPPOSITION TO PLAINTIFFS' RENEWED MOTION FOR EXPEDITED DISCOVERY

Wheeler Real Estate Investment Trust ("Wheeler") offers this memorandum in opposition to the plaintiffs' renewed motion for expedited discovery.

Wheeler has entered into a merger agreement to acquire Cedar Realty Trust, Inc. ("Cedar"). The plaintiffs, owners of Cedar preferred stock, do not assert any wrongdoing by Wheeler in their motion for injunctive relief.

The plaintiffs seek expedited discovery from both Cedar and Wheeler. The request for expedited discovery should be denied in its entirety because either: (1) the only cognizable claims asserted against Cedar are legal questions of contract interpretation as to which discovery is not needed; or (2) plaintiffs will be unable to establish the irreparable harm necessary to prevail on their requests for preliminary injunctive relief. Alternatively, the Court should deny each of the five requests for the reasons set forth herein.

## THE COURT SHOULD DENY ANY EXPEDITED DISCOVERY

The legal questions before the Court at the preliminary injunction hearing require the construction of a contract between Cedar and Cedar's preferred stockholders. Specifically, the

9492309.7 57161/148694 06/02/2022

Court has to decide as a matter of law under the objective theory of contracts whether Cedar's sale of a portion of its assets to a non-party and its subsequent merger with Wheeler is a liquidation of Cedar (Amended Complaint Count I) or a transaction that triggers the limited conversion right of Cedar's preferred stockholders. (Amended Complaint Count III). The plaintiffs do not contend there is any need for expedited discovery on those issues. As more fully set forth in Cedar's opposition to plaintiffs' motion for a preliminary injunction (the "Cedar PI Opp."), plaintiffs' request for preliminary injunctive relief on the contract interpretation issue fails as a matter of law based on the unambiguous language of Cedar's Articles Supplementary. (Cedar PI Opp., ECF 30 at 11 – 22).

In paragraphs 180 - 181 and 192 - 193 of the Amended Complaint, the plaintiffs seek to go beyond the contract interpretation issue by contending that Cedar acted in bad faith by structuring the transaction with the "sole intent and motivation" to deprive the Cedar preferred stockholders of their liquidation or conversion rights.[1] As Cedar explained in showing those allegations fail to state a claim under Maryland law:

> Plaintiffs' argument is based on the faulty premise that Cedar was obligated to structure the transactions in a way that ensures the Preferred Stockholders are able to take advantage of the liquidation preference or conversion right. But the Articles contain no provision requiring Cedar to structure transactions to trigger either the liquidation preference or conversion right, and "the implied covenant of good faith and fair dealing does not obligate a party to take affirmative actions the party is clearly not required to take under the contract." *Blondell v. Littlepage,* 991 A.2d 80, 90 (Md. 2010).

---

[1] While a party can plead in the alternative, plaintiffs' allegations within each of the breach of contract counts are so internally inconsistent that they become hard to follow and illogical. The plaintiffs assert that the transactions as structured trigger the Cedar preferred stockholders' liquidation or conversion contract rights, and then allege *within the same counts* that Cedar's sole purpose in entering into the transaction as structured was to deprive the plaintiffs of those very same contract rights.

(Cedar PI Opp., ECF 30 at 22).[2]  In Count V of the Amended Complaint, the plaintiffs allege that Cedar's directors breached a fiduciary duty to Cedar's preferred stockholders by structuring the transaction in a way that their limited conversion rights were not triggered.  As Cedar explained in its opposition, there is no such fiduciary duty under Maryland law, and the rights of Cedar's preferred stockholders are limited by the contract.  (Cedar PI Opp., ECF 30 at 25 – 28).

Plaintiffs base their requests for expedited discovery on an assertion that Cedar's motivation is an issue pertinent to their claims.  Because the Amended Complaint does not state a claim against Cedar other than one for contract interpretation, Cedar's motivation is not at issue on the narrow issues to be addressed at the preliminary injunction hearing.  Accordingly, the request for expedited discovery should be denied.

The Court should alternatively deny the motion for expedited discovery in its entirety because the plaintiffs will be unable to establish they would be irreparably harmed without a preliminary injunction.  (Cedar PI Opp., ECF30 at 28 -31).   Dimension *Data N. Am., Inc. v. NexStar-1, Inc.*, 226 F.R.D. 528 (E.D.N.C. 2005) (denying expedited discovery in part because the plaintiff had not shown it would be irreparably injured by delaying discovery, and there was no showing that discovery would be unavailable later in the case);  *L'Occitane, Inc. v. Trans Source Logistics, Inc.* 2009 WL 3746690 (D. Md. 2009) (denying expedited discovery because plaintiff did not demonstrate how requested discovery would demonstrate the likelihood of irreparable harm absent a preliminary injunction).  *See also Davis v. Duncan Energy Partners*

---

[2] The covenant of good faith and fair dealing only precludes a party to a contract from taking actions that prohibit the other party from performing its obligations under the contract, a situation not present here.  The covenant of good faith and fair dealing does not in any way abrogate the objective theory of contract interpretation or allow a court to speculate as to a party's motivation when interpreting a contract. *See* Cedar PI Opp., ECF 30 at 23.

*L.P.*, 801 F.Supp.2d 589, 596 – 598 (S.D.Tex. 2011) (in the context of a merger transaction, a court may deny a request for expedited discovery where the plaintiffs can pursue money damages after the merger and therefore will be unable to establish irreparable harm.)

### **THE COURT SHOULD DENY EXPEDITED DISCOVERY OF EACH DOCUMENT (OR CATEGORY OF DOCUMENTS) IDENTIFIED IN PLAINTIFFS' MOTION FOR EXPEDITED DISCOVERY**

The plaintiffs' request for expedited discovery should be denied even if the individual requests are considered separately. The plaintiffs perseverate in their attempt (already once rebuffed by this Court) to obtain expedited discovery without raising any new issues or explaining how the need for discovery arose from the oppositions filed by the defendants to the motion for preliminary injunctive relief. To be sure, a court can order expedited discovery to aid in the resolution of a preliminary injunction motion if good cause is shown after taking into account the totality of the circumstances. However, even the cases cited by plaintiffs in their memorandum in support of their request for expedited discovery support defendants' position that expedited discovery is the exception and not the rule. Rather, a plaintiff must show good cause, have narrowly drawn their discovery requests, and show how each request will yield information needed to prove the issues to be addressed at the hearing on the request for preliminary injunctive relief. *Dimension Data N. Am., Inc. v. NexStar-1, Inc.*, 226 F.R.D. at 532 (adopting the good cause test and denying relief because, *inter alia*, the requests were not tailored to meet issues relevant to the preliminary injunction, the plaintiff had not shown it would be irreparably injured by delaying discovery, and there was no showing that discovery would be unavailable later in the case); *L'Occitane, Inc. v. Trans Source Logistics, Inc.,* 2009 WL 3746690 at * 2 (denying relief because plaintiff did not demonstrate how requested discovery would demonstrate the likelihood of irreparable harm absent a preliminary injunction); *Palermo v. Underground Solutions, Inc.*, 2012 WL 2106228 (S.D. Cal. June 11, 2012) (denying expedited

4

discovery because the plaintiff had not established a need for it and the requests were overly broad).

Wheeler addresses below each of the five documents (or categories of documents) sought by the plaintiffs on an expedited basis. (P Memo, ECF 32-1 at 1).[3]

*The Company Disclosure Schedule*

The plaintiffs seek the "Company Disclosure Schedule" as evidence of the equity in and cash flow from the properties to be owned by Cedar at the time of the merger. (P Memo, ECF 32-1 at 8 - 10). The plaintiffs state that the disclosure information is an Exhibit to the Merger Agreement. While the plaintiffs assert it was odd that the information was not publicly disclosed as part of the proxy, they do not cite to any requirement that such information must be disclosed, there is no such requirement, 17 C.F.R. § 229.601(a)(5), and there are good business reasons for not doing so.[4]

The Company Disclosure Schedule contains information about the properties Cedar will own when its common stock is acquired by Wheeler. A request for a document containing private and detailed information about each tenant in 19 shopping centers does not address the contract issues before the Court and will not enable the plaintiffs to show a likelihood of success on their contract claims under Cedar's Articles Supplementary. It is also hard to imagine what use could be made of numerical data about approximately 260 tenants in a 50 page rent roll on an expedited basis.

---

[3] A reference to "P Memo, ECF 32-1 at ___" is to the Memorandum of Law in Support of Plaintiffs' Renewed Motion for Expedited Discovery at ECF 32-1.

[4] The plaintiffs have not asserted any inadequate disclosure claims in their Amended Complaint.

5

In addition, the tenant specific information contained in the rent roll is sensitive, competitive, financial information that should not be disclosed absent a protective order. The dissemination of that information could assist others to try to convince tenants to relocate and could be used for other purposes by competitors.

Wheeler understands that Cedar is willing to disclose the Company Disclosure Schedule, not based on Cedar's need to establish a likelihood of prevailing on the issues of law to be addressed at the preliminary injunction hearing, but to give plaintiffs access to the exhibits to the merger agreement. Wheeler disagrees, and asks the Court not to open the door to expedited discovery where the plaintiffs have not satisfied their burden. Plaintiffs have not shown they need the detailed information to show a likelihood of success on the merits of the claims at issue at the preliminary injunction hearing or explained how they would use the detailed information to show any alleged harm. The Court should not be swayed by the plaintiffs' suggestion that the disclosure could even establish Cedar's motivation, even if that issue was somehow pertinent (which it is not).

*The Due Diligence Materials*

The plaintiffs ask for due diligence materials provided to bidders in the online data room. The plaintiffs assert they are looking for "discrete" documents. That clearly is not the case with respect to due diligence materials provided by Cedar and Wheeler in a data room (which counsel for Cedar has informed us contained approximately 12,000 separate documents). It is hard to imagine a broader request.

Even assuming the data room is still accessible, it included all or virtually every document provided by each of the parties to the transaction. An objection would be provided to the overbreadth of a request for every document exchanged by the parties in their due diligence even in the context of non-expedited discovery. This is a fishing expedition of the worst kind,

and the plaintiffs come nowhere close to explaining how such a vast compendium of documents would bear on the issues that could be addressed at the hearing.

The only justification proffered by plaintiffs for access to the data room is that another unnamed entity offered Cedar $240 million for the remaining properties Cedar will continue to own at the time of the merger with Wheeler, rather than the $291.3 million value placed on those properties in the merger transaction. (P Memo, ECF 31-1 at 10 -11). The plaintiffs surmise that some unidentified documents in the data room must have been used by that non-party in making its unsuccessful bid at some undisclosed time. Even if that issue had some relevance to the contract issues before the Court (it does not) and even if Cedar's motivation had any relevance to the preliminary injunction issues (it does not), a lowball bid from some unknown non-party hardly justifies expedited discovery allowing the plaintiffs free rein to rummage through thousands of documents in the data room.

*Materials Sufficient To Ascertain How Defendants Are Treating The Proposed Acquisitions for Tax Purposes*

The plaintiffs claim they "have reason to believe" that the defendants may be treating the transaction as a liquidation for tax purposes. (P Memo, ECF 32-1 at 11). The plaintiffs do not explain the basis for that belief. In any event, Wheeler is acquiring Cedar. Wheeler will operate the post-merger Cedar as an ongoing commercial real estate business. That alone shows there will be no liquidation.

The plaintiffs have not (and cannot) explain how the tax treatment (if any) by Wheeler that would result from Wheeler's acquisition of Cedar's common stock would bear on whether the transaction is being treated as a liquidation by Cedar. Further, Cedar's public filings address how Cedar intends to treat the transaction for tax purposes – not as a liquidation. Finally,

Wheeler is not aware of any document that it could produce even if the Court were to find that such a request proper for expedited discovery.

*The Commitment Letter from Wheeler's Bank*

The plaintiffs seek the commitment letter from Key Banc to loan Wheeler money with which to acquire Cedar's common stock. The plaintiffs assert that knowing the repayment terms of the loan "are crucial to determining whether the cash flow" from the properties which will be owned by Cedar at the time of the merger "is, in fact, adequate to pay dividends to [Cedar] Preferred Stockholders." (P Memo, ECF 32-1 at 10). It is unclear how that issue goes to any of the preliminary injunction issues even if Cedar's motivation was somehow pertinent (which it is not).

This was a business transaction for Wheeler. It is not plausible that Wheeler would enter into an acquisition where the cash flow projections were insufficient to cover debt service and obligations to the Cedar Preferred Stockholders, and still generate a profit.

In any event, counsel for Wheeler has reviewed the commitment letter and it does not contain an expected or required cash flow. The loan commitment, however, requires that the fixed charge coverage ratio be greater than or equal to 1.2 including "all contractual dividend payments" on the Cedar Preferred Stock. In other words, the bank financing the transaction requires that the cash flow from the properties to be owned by Cedar after the merger generate at least a 20% cushion over Cedar's obligations on the debt (which is guaranteed by Wheeler) and dividend obligations to Cedar's Preferred Stockholders. The bank will not make the loan absent its determination that the cash flow will be at least 20% more than the dividend obligations to the Cedar preferred stockholders and the debt service combined.

If the Court nonetheless was to Order Wheeler to produce the commitment letter, it would have to be subject to a restrictive protective order approved by Wheeler and potentially Key Banc.

*The Board Minutes*

The plaintiffs seek "minutes of all board and committee meetings in which the transaction[s] which form the subject matter of this litigation were discussed or considered." (P Memo at 1). The plaintiffs assert the Board Minutes should be produced because they may show the alleged bad faith motivation to circumvent the contractual requirements in Cedar's Articles Supplementary as they apply to Cedar's Preferred Stock or they may bear upon the adequacy of the cash flow from or value of the properties that Cedar will continue to own at the time of the merger. (P Memo, ECF 32-1 at 7). As set forth above and in defendants' respective oppositions to the request for preliminary injunctive relief, Cedar's motivation is not relevant to the contractual interpretation issues before the Court at the preliminary injunction hearing.

Moreover, the request is overbroad even if the motivation of the parties with respect to the preferred stockholders could be an issue to be addressed at the preliminary injunction hearing. If the request is sufficiently narrowed to excerpts from board minutes addressing the avoidance of or inability to meet obligations to Cedar's preferred stockholders, Wheeler does not have anything to produce.

## **CONCLUSION**

For the foregoing reasons, Wheeler respectfully requests that the Court deny the plaintiffs expedited discovery in advance of the hearing to consider preliminary injunctive relief.

9

                    */s/ Jerrold A. Thrope*
Jerrold A. Thrope (Bar No. 01376)
Gordon Feinblatt LLC
1001 Fleet Street, Suite 700
Baltimore, Maryland  21202
(410) 576-4295 (Phone/Fax)
jthrope@gfrlaw.com

*/s/ Elizabeth G. Clark*
Alston & Bird
90 Park Avenue
15th Floor
New York, NY  10016-1387
(212) 210-9400 (Phone)
(212) 210-9444 (Fax)
Elizabeth.Clark@alston.com
*\*admitted pro hac vice*

*Attorneys for Defendant*
*Wheeler Real Estate Investment Trust, Inc.*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 2nd day of June, 2022, a copy of the foregoing was electronically filed and served through the Court's CM/ECF system.

                    */s/ Jerrold A. Thrope*
Jerrold A. Thrope