**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**

| | |
|---|---|
| DAVID SYDNEY, SWC PHOENIX FUND I, L.P., MARTIN NOVICK, J RENEE BRENNAN LIVING TRUST, SCOTT SCHROEPFER, KENNETH KAMHOLZ, JOE SPEISER, and ELBERT CAPITAL I LLC, Individually and On Behalf of All Others Similarly Situated, <br><br> Plaintiffs, <br><br> v. <br><br> CEDAR REALTY TRUST, INC., CEDAR REALTY TRUST PARTNERSHIP, L.P., WHEELER REAL ESTATE INVESTMENT TRUST, INC., BRUCE J. SCHANZER, GREGG A. GONSALVES, ABE EISENSTAT, STEVEN G. ROGERS, SABRINA KANNER, DARCY D. MORRIS, RICHARD H. ROSS, and SHARON STERN, <br><br> Defendants. | Case No. 8:22-cv-1142-GLR |

**THE CEDAR DEFENDANTS' MEMORANDUM OF LAW IN OPPOSITION TO**
**PLAINTIFFS' RENEWED MOTION FOR EXPEDITED DISCOVERY**

## <u>TABLE OF CONTENTS</u>

**Page(s)**

INTRODUCTION ................................................................................................. 1

BACKGROUND ................................................................................................. 2

ARGUMENT ..................................................................................................... 5

I.   PLAINTIFFS HAVE NOT ARTICULATED A PROPER PURPOSE FOR
     EXPEDITED DISCOVERY .......................................................................... 7

     A.   Discovery Is Not Needed To Determine If Plaintiffs Have Shown They
          Are Likely To Succeed On Merits Of Their Claims. ............................... 8

     B.   Discovery Is Not Needed To Assess If Plaintiffs Will Suffer Irreparable
          Harm In the Absence Of A Preliminary Injunction. ............................ 12

II.  THE EXPEDITED DISCOVERY REQUESTS ARE OVERBROAD. ......................... 13

III. PLAINTIFFS HAVE NOT OTHERWISE DEMONSTRATED GOOD CAUSE
     FOR EXPEDITED DISCOVERY. ................................................................ 16

     A.   Plaintiffs Would Not Be Irreparably Harmed In The Absence Of
          Expedited Discovery Prior To The Preliminary Injunction Hearing. ............... 16

     B.   Plaintiffs' Conduct In Seeking Expedited Discovery From Defendants
          Defeats Any Showing Of Good Cause. .............................................. 17

     C.   The Expedited Requests Are Burdensome. ........................................ 19

     D.   The Other So-Called "Reasonableness Factors" Cited By Plaintiffs Do Not
          Support A Finding Of Good Cause. .................................................. 20

CONCLUSION ................................................................................................... 21

## <u>TABLE OF AUTHORITIES</u>

**Cases**                                                                        **Page(s)**

*Allen v. City of Graham*,
    2021 WL 2037983 (M.D.N.C. May 21, 2021) ...................................................................13

*Blades of Green, Inc. v. Go Green Lawn & Pest, LLC*,
    2022 U.S. Dist. Lexis 19699 (D. Md. Feb. 3, 2022)..............................................................11

*Blondell v. Littlepage*,
    991 A.2d 80 (Md. 2010) ..........................................................................................................9

*Brightview Grp. v. Teeters*,
    2019 WL 11660174 (D. Md. Nov. 6, 2019) ............................................................................6

*Chevron Mining v. Skanska United States Civil W. Rocky Mt. Dist.*,
    2019 U.S. Dist. LEXIS 237694 (N.D. Cal. Sep. 3, 2019) .....................................................19

*Chryso, Inc. v. Innovative Concrete Sol'ns of the Carolinas, LLC*,
    2015 WL 12600175 (E.D.N.C. June 30, 2015) ......................................................................7

*Dan River, Inc. v. Unitex, Ltd.*,
    624 F.2d 1216 (4th Cir. 1980) ..............................................................................................12

*Davis v. Duncan Energy Partners L.P.*,
    801 F. Supp. 2d 589 (S.D.Tex. 2011)...................................................................................17

*Dimension Data N. Am., Inc. v. NetStar-1, Inc.*,
    226 F.R.D. 528 (E.D.N.C. 2005) ...............................................................................6, 12, 16

*Entm't Tech. Corp. v. Walt Disney Imagineering*,
    2003 U.S. Dist. LEXIS 19832 (E.D. Pa. Oct. 2, 2003).........................................................21

*Equity-Linked Invs., L.P. v. Adams*,
    705 A.2d 1040 (Del. Ch. 1997)..............................................................................................10

*Hinkle v. City of Clarksburg*,
    81 F.3d 416 (4th Cir. 1996) ...................................................................................................18

*Intel Corp. v. Raise*,
    2019 U.S. Dist. Lexis 4932 (W.D. Tex. Jan. 10, 2019)........................................................12

*Ixe Banco, S.A. v. MBNA Am. Bank, N.A.*,
    2008 WL 650403 (S.D.N.Y. Mar. 7, 2008) ...........................................................................8

*KPM Analytics N. Am. v. Blue Sun Sci., LLC*,
    2021 WL 2002581 (D. Mass. May 19, 2021) .................................................................12, 21

*L'Occitane, Inc. v. Trans Source Logistics, Inc.*,
    2009 WL 3746690 (D. Md. Nov. 2, 2009) .......................................................................6, 20

*LC Cap. Master Fund, Ltd. v. James*,
    990 A.2d 435 (Del. Ch. 2010).........................................................................................10

*Lewis v. Alamance Cnty.*,
    2015 WL 2124211 (M.D.N.C. May 6, 2015) .....................................................................20

*Martin v. Dolet*,
    2020 WL 3317789 (Md. Ct. Spec. App. June 18, 2020) ........................................................8

*Merz North Am. Inc. v. Viveve Medical Inc.*,
    2017 WL 11613694 (E.D.N.C. May 5, 2017) .................................................................6, 7

*Mezu v. Morgan State Univ.*,
    269 F.R.D. 565 (D. Md. 2010)........................................................................................17

*NAPCO, Inc. v. Landmark Tech. A, LLC*,
    555 F. Supp. 3d 189 (M.D.N.C. 2021) .................................................................6, 16, 20, 21

*Nat'l Urb. League v. DeJoy*,
    2020 WL 8413573 (D. Md. Sept. 3, 2020) .....................................................................6, 16

*Océ North Am., Inc. v. MCS Svcs., Inc.*,
    2010 WL 11553001 (D. Md. June 22, 2010).................................................................7, 20

*Palermo v. Underground Solutions, Inc.*,
    2012 U.S. Dist. Lexis 80616 (S.D. Cal. June 11,2012) ........................................................12

*Parker v. Columbia Bank*,
    604 A.2d 521 (Md. Ct. Spec. App. 1992) ..........................................................................9

*Semitool, Inc. v. Tokyo Electron Am., Inc.*,
    208 F.R.D. 273 (N.D. Cal. 2002) ....................................................................................19

*Tiffany v. Forbes Custom Boats, Inc.*,
    959 F.2d 232 (4th Cir. 1992) .........................................................................................12

*In re Trados Inc. S'holder Litig.*,
    73 A.3d 17 (Del. Ch. 2013)............................................................................................10

## Other Authorities

17 C.F.R. § 229.601(a)(5) ..................................................................................................15

District of Maryland Local Rule 104.4 ....................................................................................4

Federal Rule of Civil Procedure 26 .........................................................................................5

Federal Rule of Civil Procedure 30 ....................................................................................4

Maryland Rule of Civil Procedure 2-401.............................................................................4

Maryland Rule of Civil Procedure 2-431.............................................................................4

Defendants Cedar Realty Trust, Inc. ("Cedar" or the "Company"), Cedar Realty Partnership, L.P. ("Cedar Partnership"), Bruce J. Schanzer, Gregg A. Gonsalves, Abe Eisenstat, Steven G. Rogers, Sabrina Kanner, Darcy D. Morris, Richard H. Ross, and Sharon Stern[1] respectfully submit this memorandum in opposition to Plaintiffs' Renewed Motion for Expedited Discovery (the "Motion" or "Mot."). For the following reasons, the Cedar Defendants respectfully submit that Plaintiffs' Motion should be denied.

## INTRODUCTION

Plaintiffs' request for the expedited production of over 12,000 documents is an unjustified and unnecessary fishing expedition that is designed to harass, not to obtain discovery relevant to the Court's adjudication of Plaintiffs' Motion for Preliminary Injunction ("PI Motion" and "PI Mot."), and should be denied. This "renewed" Motion was initiated just two days following this Court's May 16, 2022 denial of Plaintiffs' original motion for expedited discovery as unnecessary and moot. ECF No. 7. During the telephonic conference held on May 16, this Court plainly instructed Plaintiffs that after the Defendants had an opportunity to oppose the PI Motion, the Plaintiffs could—*in their reply brief (which they have not yet filed)*—seek limited discovery if warranted by the arguments in Defendants' oppositions. Plaintiffs disregarded the Court's clear instructions and instead restarted the process of seeking discovery a full week before the Cedar Defendants filed their Opposition (and more than two weeks before their reply was due). Unsurprisingly, the discovery requests before the Court are not related to the defenses asserted in

---

[1] Each individual defendant is a director of Cedar, and they are collectively referred to as the "Directors" or "Board" and, together with Cedar and Cedar Partnership, the "Cedar Defendants." Capitalized terms not otherwise defined herein have the same meaning as in the Cedar Defendants' Opposition to the Motion for Preliminary Injunction ("Opposition" or "Opp."), filed on May 25, 2022 (ECF No. 30). Unless noted, all citations and quotations are omitted, and all emphasis is added.

the Opposition, and nothing in the Opposition or the Plaintiffs' Motion changes the Court's initial analysis that this case presents legal issues that will rise and fall on the language of the documents already in the record—the governing contract (the Articles), the Merger Agreement, and the Proxy—and not any factual issue, and that the preliminary injunction can and therefore should be decided on the papers.

Expedited discovery is available in advance of a preliminary injunction hearing only upon a showing of "good cause" based on consideration of the totality of the circumstances. The circumstances here confirm that there is no good cause for Plaintiffs to obtain discovery outside of the normal process provided by the Federal Rules of Civil Procedure. The issues to be adjudicated at the upcoming hearing on Plaintiffs' PI Motion are solely legal, and the only facts that impact the analysis of these legal issues are uncontroverted. Expedited discovery is unnecessary to the resolution of those issues, and Plaintiffs have articulated no proper purpose to obtain this discovery in advance of the hearing and no risk of irreparable harm from the denial of expedited discovery. Not only are the requests overbroad and not narrowly tailored to the preliminary injunction issues, the expedited production of these materials in the weeks before the hearing would impose a significant burden on Cedar. This Court has already ruled once that the requested discovery is unnecessary for its analysis of the preliminary injunction petition. There has been no change to the Plaintiffs' claims and no argument advanced by the Cedar Defendants (or Wheeler) that would make the requested discovery proper now.

## BACKGROUND

Plaintiffs filed this lawsuit in the Circuit Court for Montgomery County on April 12, 2022. ECF No. 1-2. A little more than a week later, Plaintiffs filed a motion for expedited discovery purportedly seeking to obtain documents and information necessary to file a motion for

preliminary injunction. ECF No. 7. Although the Maryland Rules of Civil Procedure authorize parties to serve discovery requests at any time, *see* Md. R. Civ. P. Cir. Ct. 2-401(b), Plaintiffs never served the Cedar Defendants or Wheeler with discovery requests while the case was pending in Maryland Circuit Court. Nor did Plaintiffs ever seek to meet and confer with the Cedar Defendants regarding their motion for expedited discovery or an expedited schedule to respond to any potential discovery requests, as required by the Maryland Rules. *See* Md. R. Civ. P. Cir. Ct. 2-431. Then, on May 6, 2022, while their motion for expedited discovery was still pending and before obtaining any discovery from Defendants, Plaintiffs reversed course and filed both a motion for preliminary injunction, ECF No. 8, and a motion for expedited briefing schedule and hearing date for their motion for preliminary injunction, ECF No. 9.

On May 11, 2022, after a different group of Cedar's Preferred Stockholders filed a substantially similar class action in the United States District Court for the District of Maryland, Defendants removed this case to federal court pursuant to the removal provisions of the Class Action Fairness Act in order to coordinate the actions. ECF No. 1. Plaintiffs' motion for expedited discovery, motion for preliminary injunction, and motion for expedited briefing schedule and hearing date all remained pending as of the removal to this Court. Two days later, on May 13, 2022, Plaintiffs filed a motion for temporary restraining order seeking substantially the same relief as their already pending motion for preliminary injunction. ECF No. 13.[2]

On May 16, 2022, this Court held a telephonic conference to address Plaintiffs' motion for expedited briefing schedule and hearing. ECF No. 15 at 1. In addition to setting a briefing schedule and hearing date for Plaintiffs' PI Motion, this Court denied Plaintiffs' original motion for

---

[2] The parties have agreed to treat Plaintiffs' motion for temporary restraining order as a motion for preliminary injunction and to deem that the operative motion for injunctive relief, the PI Motion. ECF No. 24 ¶ 3.

expedited discovery as moot because Plaintiffs had already moved for a preliminary injunction. *Id.* During the conference, this Court instructed Plaintiffs that if they wished to renew their request for expedited discovery they could do so but *only in their reply brief if they believed factual issues had been raised by Defendants in their briefs in opposition to Plaintiffs' PI Motion*. This Court cautioned that because Plaintiffs' claims are primarily contractual in nature, the Court believed that Plaintiffs' PI Motion could be resolved without the need for discovery. But this Court allowed Plaintiffs to include a limited request for expedited discovery in their reply brief in further support of their PI Motion *if* Plaintiffs identified a narrow issue (or issues) on which they needed discovery in advance of the preliminary injunction hearing after reviewing the opposition briefs.

On May 18, 2022, two days after the telephonic conference when this Court denied Plaintiffs' original motion for expedited discovery and a week before Defendants were due to file their briefs in opposition to Plaintiffs' PI Motion, Plaintiffs wrote to Defendants requesting the production of Cedar Board-level documents and depositions of a representative of Cedar and Wheeler pursuant to Rule 30(b)(6) of the Federal Rules of Civil Procedure. *See* 5/18/2022 Ltr. from D. Enright (Luz Ex. 1).[3] Defendants responded on May 20, 2022, objecting to Plaintiffs' request on the bases that (1) it was untimely because Defendants had not yet filed their opposition briefs and Plaintiffs had not otherwise adhered to the timetable set forth by this Court during the May 16, 2022 conference; and (2) Plaintiffs' letter failed to establish good cause for their expedited discovery requests in advance of the preliminary injunction hearing. *See* 5/20/2022 Ltr. from W. Krulak (Luz Ex. 2). Nevertheless, Defendants agreed to meet and confer on May 25, 2022, at 11 AM, to discuss Plaintiffs' discovery requests contained in the May 18, 2022 letter.

---

[3] Citations to "Luz Ex." are to exhibits to the Declaration of Jennifer Burns Luz in Support of the Cedar Defendants' Memorandum of Law in Opposition to Plaintiffs' Renewed Motion for Expedited Discovery.

Fifteen minutes before the May 25, 2022 meet and confer was due to commence, Plaintiffs emailed Defendants with an additional set of document requests seeking (1) the disclosure schedules to the Wheeler Merger Agreement; (2) the commitment letter provided to Wheeler by KeyBank in connection with Wheeler's financing of the Wheeler Merger; (3) due diligence materials contained in the data room used during Cedar's strategic review process; and (4) materials sufficient to show how Defendants' intend to treat the Grocery-Anchored Portfolio Sale and Wheeler Merger for tax purposes. *See* 5/25/2022 Email from. J. Fruchter (Luz Ex. 3). During the meet and confer, Cedar maintained its position that expedited discovery was untimely and unwarranted and explained that it had insufficient time to consider Plaintiffs' late-breaking document requests. Krulak Decl. ¶ 12. Cedar stated that it would consider Plaintiffs' new requests and would follow up with Plaintiffs with its position on the new requests. *Id.* ¶ 14. The next day, on May 26, 2022, Plaintiffs filed this Motion without waiting to hear back from Defendants regarding the new requests. *Id.* ¶ 15. Plaintiffs' Motion seeks production of Cedar's board minutes concerning the transactions as well as the four categories of documents that Plaintiffs first requested 15 minutes prior to the parties' sole meet and confer concerning Plaintiffs' efforts to obtain expedited discovery.

## ARGUMENT

Ordinarily, parties are not permitted to serve discovery requests until after the initial scheduling conference has been held pursuant to Rule 26(f) of the Federal Rules of Civil Procedure. *See* Fed. R. Civ. P. 26(d)(1). In limited circumstances, however, courts may authorize expedited discovery prior to the Rule 26(f) scheduling conference. *Id.*; *see also* Md. Local R. 104.4 ("Unless otherwise ordered by the Court . . . discovery shall not commence and disclosures need not be made until a scheduling order is entered."). To determine whether expedited discovery is appropriate, this Court (and others in the District of Maryland) look to the "totality of the

circumstances" to determine whether good cause exists for expedited discovery. *See Nat'l Urb. League v. DeJoy*, 2020 WL 8413573, at *1 (D. Md. Sept. 3, 2020) (Russell, J.); *see also Brightview Grp. v. Teeters*, 2019 WL 11660174, at *1 (D. Md. Nov. 6, 2019) ("Courts in this District have adopted a reasonableness standard in reviewing expedited discovery requests, determining whether the request is supported by good cause, considering the totality of the circumstances."). The circumstances considered include the purpose of requesting the expedited discovery, whether the discovery requests are narrowly tailored, and the burden on the defendant. *See, e.g.*, *DeJoy*, 2020 WL 8413573, at *1-2.[4] As part of its "good cause" showing, the party seeking expedited discovery must demonstrate that they "are likely to be irreparably harmed by the denial of their Motion." *DeJoy*, 2020 WL 8413573, at *2; *see also Merz North Am. Inc. v. Viveve Medical Inc.*, 2017 WL 11613694, at *3 (E.D.N.C. May 5, 2017) (plaintiff "must establish the existence of irreparable harm if expedited discovery is not permitted"); *Dimension Data N. Am., Inc. v. NetStar-1, Inc.*, 226 F.R.D. 528, 532 (E.D.N.C. 2005) ("[P]laintiff has not made an adequate showing that it will be irreparably harmed by delaying the broad-based discovery requested until after the initial conference between the parties pursuant to Rule 26 . . . ."). Where the moving party is seeking discovery in advance of a preliminary injunction hearing, the requested discovery must be "narrowly tailored to obtain information relevant to a preliminary injunction determination." *L'Occitane, Inc. v. Trans Source Logistics, Inc.*, 2009 WL 3746690, at *2 (D. Md. Nov. 2, 2009).

---

[4] Plaintiffs rely on *NAPCO, Inc. v. Landmark Tech. A, LLC*, 555 F. Supp. 3d 189, 225 (M.D.N.C. 2021), which identified five "reasonableness factors" that some district courts consider when weighing the reasonableness of requests for expedited discovery. The "totality of circumstances" test, however, is not limited to just these five factors. *See, e.g.*, *DeJoy*, 2020 WL 8413573, at *2 (weighing other factors, including the availability of discovery from related litigations and the existence of "colorable challenges" to the plaintiffs' standing and the court's jurisdiction to hear plaintiffs' claims).

## I.   PLAINTIFFS HAVE NOT ARTICULATED A PROPER PURPOSE FOR EXPEDITED DISCOVERY.

As the Court correctly assessed during the May 16 conference, discovery is unnecessary to determine for the purposes of the PI Motion whether Plaintiffs are likely to succeed on the merits of their claims because this is a contract case, and the non-contract claims cannot survive if the contract claims fail. Plaintiffs nonetheless argue that they have shown a proper purpose for expedited discovery because the requested documents "address key factual issues . . . that the Court *will need to resolve in order to decide the merits of Plaintiffs' claims after the hearing*." Mot. at 6. But this is not the standard. Rather, expedited discovery must be specifically targeted "*to obtaining injunctive relief*, and not simply be addressed to the merits of plaintiff's claims." *Merz North Am. Inc.*, 2017 WL 11613694, at *2; *see also Océ North Am., Inc. v. MCS Svcs., Inc.*, 2010 WL 11553001, at *1 (D. Md. June 22, 2010) ("Expedited discovery requests must also be narrowly tailored to obtain information relevant to a preliminary injunction determination."); *Chryso, Inc. v. Innovative Concrete Sol'ns of the Carolinas, LLC*, 2015 WL 12600175, at *5 (E.D.N.C. June 30, 2015) (denying expedited discovery requests because "[w]hile some of these topics may be relevant to the overall case, they are not narrowly tailored to the issues relevant to the preliminary injunction").

None of the requested discovery is proper or necessary for the Court to consider during the upcoming hearing on Plaintiffs' PI Motion. At that hearing, the Court will decide if Plaintiffs have established that they are likely to succeed on the merits of their claim, if Plaintiffs will be irreparably harmed in the absence of an injunction, and whether the balance of equities and public interest favor an injunction. As the preliminary injunction briefing makes clear, the issues presented are exclusively legal and not factual, rendering discovery unnecessary.

**A.      Discovery Is Not Needed To Determine If Plaintiffs Have Shown They Are
Likely To Succeed On Merits Of Their Claims.**

Plaintiffs argue that the requested documents fall into two categories relevant to the
preliminary injunction hearing: (1) documents that show Cedar's intent and motivation; and
(2) documents that show the value of Cedar and its assets after the consummation of the Wheeler
Merger. Neither category is relevant to the question before the Court of whether Plaintiffs are
likely to succeed on the merits of their claims.

As discussed more fully in the Opposition, all of Plaintiffs' claims are contractual in nature.
Opp. at 2-3. Intent and motivation have zero bearing on whether or not Plaintiffs are likely to prove
that there was a breach of the Articles. *See Martin v. Dolet*, 2020 WL 3317789, at *14 (Md. Ct.
Spec. App. June 18, 2020) (motive is not an element of a contract claim), *cert. denied*, 238 A.3d
272 (2020); *see also Ixe Banco, S.A. v. MBNA Am. Bank, N.A.*, 2008 WL 650403, at *7 (S.D.N.Y.
Mar. 7, 2008) (allegations of "improper motive" are "irrelevant to the breach of contract inquiry,
including the inquiry into whether Defendants breached any covenant of good faith and fair
dealing").

Likewise, information about the value of Cedar and its assets after the Wheeler Merger is
consummated is irrelevant to assessing whether Plaintiffs are likely to succeed on their contract
claims. Plaintiffs argue that expedited discovery of Cedar's valuation is proper because this value
is the "justification" for not paying the Preferred Stockholders the liquidation preference or
allowing conversion. Mot. at 8. This is incorrect. As explained in the Opposition, Preferred
Stockholders' liquidation preference and conversion rights are defined entirely by the language of
the Articles, and the Articles are unambiguous: neither the Grocery-Anchored Portfolio Sale nor
the Wheeler Merger constitute a liquidation that triggers the liquidation preference or a Change of
Control that triggers the limited conversion right. Opp. at 11-22. The only things that matters to

8

the analysis of the breach of contract claims are: (1) the plain and unambiguous language of the Articles; (2) the undisputed fact that Cedar will continue to exist as a going concern with significant assets after the Wheeler Merger (and thus there is no actual or *de facto* liquidation); and (3) the undisputed fact that Wheeler, Cedar's acquiror, has and will continue to have publicly traded common stock (and thus there is no "Change of Control"). The relevant provisions of the Articles do not discuss or depend on the *value* of Cedar and its assets, *see* Art. Sup. (PI Mot. Exs. 1-2) §§ 4, 5(j), and discovery related to valuation is improper at this stage.

To the extent that Plaintiffs argue that the requested discovery is relevant to the claim for breach of the implied covenant of good faith and fair dealing, that too is misplaced. Plaintiffs' claim for breach of the implied covenant asserts that the Cedar Defendants structured the deal so as to deprive Preferred Stockholders of their liquidation preference and conversion rights under the Articles. But the Articles contain no provision requiring Cedar to structure transactions to trigger either the liquidation preference or conversion right, and "the implied covenant of good faith does not obligate a party to take affirmative actions that the party is clearly not required to take under the contract." *Blondell v. Littlepage*, 991 A.2d 80, 90 (Md. 2010). Thus, this is a straightforward contract claim because the liquidation preference and conversion rights—indeed, *all* Preferred Stock rights—are based on the language of Articles and that contract is all that the Court need review to make its decision. And, as explained more fully in the Opposition, the implied covenant does not require Cedar to take affirmative actions, such as structuring transactions in a specific way, absent a specific, express obligation to do so in the Articles. Opp. at 22-23. The implied covenant reaches only so far as to prevent Cedar from preventing Preferred Stockholders from performing their obligations under the Articles. *See Parker v. Columbia Bank*, 604 A.2d 521, 531 (Md. Ct. Spec. App. 1992); Opp. at 23. No evidence about Cedar's motive or intent, or the

value of Cedar post-merger, is relevant to the inquiry of whether or not Preferred Stockholders were prevented from performing their obligations under the Articles.

Likewise, the Court need not consider evidence of motive or valuation in order to determine whether Plaintiffs are likely to succeed on their breach of fiduciary duty claims. Plaintiffs' likelihood of success on this claim depends on the legal questions of whether there can be a claim for breach of fiduciary duty in Maryland based on contractual rights (there cannot, *see* Opp. at 25) and whether directors owe fiduciary duties to preferred stockholders when the preferred stockholders' interests are economically adverse to common stockholders' interests (they do not, *see id* at 26-29). As explained in detail in the Cedar Defendants' Opposition, the alleged fiduciary duties that Plaintiffs posit as the basis for their discovery are simply non-existent under Maryland law. *See Equity-Linked Invs., L.P. v. Adams*, 705 A.2d 1040, 1042 (Del. Ch. 1997) ("[G]enerally it will be the duty of the board, where discretionary judgment is to be exercised, to prefer the interests of common stock—as the good faith judgment of the board sees them to be—to the interests created by the special rights, preferences, etc., of preferred stock."). Because the rights of the Preferred Stockholders are addressed by the Articles, the Board should not go beyond the Articles "and extend some unspecified fiduciary beneficence on the preferred at the expense of the common." *LC Cap. Master Fund, Ltd. v. James*, 990 A.2d 435, 449 (Del. Ch. 2010) (because "[t]he special protections offered to the preferred are contractual in nature," the board's duty "where discretionary judgment is to be exercised to prefer the interests of common stock . . . where there is a conflict"); *see also In re Trados Inc. S'holder Litig.*, 73 A.3d 17, 39 (Del. Ch. 2013) ("A board does not owe fiduciary duties to preferred stockholders when considering whether or not to take corporate action that might trigger or circumvent the preferred stockholders' contractual rights."). Plaintiffs should not be able to go on a fishing expedition to "discover" facts in search of a non-

existent claim.

Plaintiffs also argue that they need information about *all* leases, *all* subleases, *all* material contracts, and insurance agreements, to determine if their interests as Preferred Stockholders will be protected in the Wheeler Merger. Mot. at 9. But the Plaintiffs' request that the Court become a *de facto* real estate valuation expert to precisely determine—on a property-by-property basis—Cedar's post-merger value at this preliminary stage is unjustified, and the terms of the Articles relieve the Court of this burden. *See* Opp. at 30. There is no requirement in the Articles that Cedar maintain a certain unlevered asset cushion in order to protect the Preferred Stockholders, and in fact, the Prospectus specifically warned that leverage could accompany significant transactions like a merger, without any protection for Preferred Stockholders. *See id*. Plaintiffs' concern about Cedar's value post-merger might eventually be an issue for the discovery phase of full merits litigation, but it does not make expedited discovery proper, particularly when coupled with Plaintiffs' concession that Cedar will continue to exist with valuable assets well in excess of the liquidation preference.[5]

Plaintiffs failed to identify even a single case where expedited discovery was granted in a case involving a merger, distribution of proceeds from an asset sale, or the contractual rights of preferred stockholders. Cases cited by Plaintiffs which grant expedited discovery are uniformly inapposite—nearly all concern allegations that there is ongoing misappropriation and dissemination of the plaintiff's trade secrets. *See, e.g.*, *Blades of Green, Inc. v. Go Green Lawn & Pest, LLC*, 2022 U.S. Dist. Lexis 19699, at *32-33 (D. Md. Feb. 3, 2022) (allowing limited

---

[5] Plaintiffs also argue that the disclosure schedules are relevant to its theory of *de facto* liquidation because the schedules include information about Cedar's liabilities that will be discharged in advance of the Wheeler Merger. But it is not disputed that Cedar is discharging certain liabilities while retaining the $161 million liquidation preference liability, and no discovery is necessary on this issue at this time.

expedited discovery on trade secret misappropriation allegations following entry of temporary restraining order); *see also* Mot. at 6-7.[6] These cases lend no support for finding that there is a proper purpose to conduct broad discovery over issues of motive and valuation in advance of a preliminary injunction hearing in a contract dispute that rests squarely on the plain language of the parties' agreement.

### B.    Discovery Is Not Needed To Assess If Plaintiffs Will Suffer Irreparable Harm In the Absence Of A Preliminary Injunction.

Plaintiffs do not argue that any of the requested documents are relevant to the other factors of the preliminary injunction analysis, including irreparable harm, balance of equities, or the public interest. Such an argument would fail. The damages sought in this case are monetary damages, which do not constitute irreparable harm in the Fourth Circuit as a matter of law. *See Tiffany v. Forbes Custom Boats, Inc.*, 959 F.2d 232, at *8 (4th Cir. 1992) (per curiam) (unpublished table decision) ("A claim or injury is not 'irreparable' if there is an adequate remedy at law for such claim or injury."); *see also* Opp. at 28-29. Plaintiffs also do not dispute that Cedar will continue to exist with valuable assets after the Wheeler Merger is completed, and there is no allegation in the Amended Complaint or elsewhere that any of the Defendants are soon to be judgment-proof. *See* Opp. at 29. Nor does any evidence of the Cedar Defendants' purported motive and intent, or the value of Cedar after the Wheeler Merger, have any bearing on the analysis of the balance of

---

[6] In addition, many of the cases cited by Plaintiffs deny or significantly limit requests for expedited discovery. *See, e.g.*, *Dimension Data*, 226 F.R.D. at 532 (denying expedited discovery in trade secrets case); *Palermo v. Underground Solutions, Inc.*, 2012 U.S. Dist. Lexis 80616, at *8 (S.D. Cal. June 11, 2012) (denying expedited discovery in defamation case); *Intel Corp. v. Raise*, 2019 U.S. Dist. Lexis 4932, at *19-20 (W.D. Tex. Jan. 10, 2019) (partially denying request for expedited discovery in trade secrets case); *KPM Analytics, N. Am. v. Blue Sun Scientific LLC*, 540 F. Supp. 3d 145, 147 (D. Mass. 2021) (same). Moreover, Plaintiffs' reliance on *Dan River, Inc. v. Unitex, Ltd.*, 624 F.2d 1216 (4th Cir. 1980), is misplaced. This 40-year old case mentions expedited discovery in its recitation of the procedural background of the case, but does not analyze whether expedited discovery was appropriate.

equities or the public interest, which clearly favor the consummation of the merger and the distribution of the proceeds from the two transactions that common stockholders overwhelmingly approved. *See* Opp. at 32-33; *see also* 5/31/2022 Form 8-K (Luz Ex. 4).

## II.   THE EXPEDITED DISCOVERY REQUESTS ARE OVERBROAD.

Plaintiffs assert, again without any explanation or support, that their expedited discovery requests are narrowly tailored and pose no burden to produce. This is totally incorrect. Plaintiffs have demanded production of all due diligence materials provided to bidders via the online data room referenced in the Proxy. Plaintiffs have made no effort to articulate what it believes to be in that data room and why those documents are relevant to the adjudication of their PI Motion. In fact, the data room—which no longer exists and would need to be reactivated—contained approximately 12,000 documents, which are largely (if not totally) unrelated to any issue in the litigation, much less the "motive and intent" and "valuation" purposes that Plaintiffs have articulated. For example, the data room included a wide variety of irrelevant (but confidential) information including corporate-level information, property surveys, property photos, information about property roofs, Cedar agreements with third parties, and information about the properties that were part of the Grocery-Anchored Portfolio Sale. Plaintiffs' request for these materials is the definition of an impermissible fishing expedition, and it should be denied. *Allen v. City of Graham*, 2021 WL 2037983, at \*7 (M.D.N.C. May 21, 2021) (denying plaintiffs' requested expedited discovery as a "fishing expedition").

Plaintiffs' requests should also be denied because they seek information already available to Plaintiffs. For example, Plaintiffs request documents showing the expected tax treatment of the Grocery-Anchored Portfolio Sale and the Wheeler Merger, which Plaintiffs argue might show that Cedar intends to treat the transactions as a liquidation of the Company. Had Plaintiffs raised this issue more than 15 minutes prior to the parties' sole meet and confer, Cedar would have been able

to explain to Plaintiffs that the document which best describes the expected tax treatment of the two transactions is the publicly filed Proxy—*which Plaintiffs have and attached to their PI Motion*. Proxy (PI Mot. Ex. 27) at 60-66. Over five pages of the Proxy are dedicated to explaining the tax treatment of the two transactions, none of which indicates that either transaction (alone or together) will be treated as a liquidation. *See id*. at 61 ("we intend to treat the distribution of the Closing Dividend as a dividend distribution to holders of shares of the common stock to the extent of the Company's current and accumulated earnings and profits"); *id*. at 63 ("the receipt of cash by U.S. holders in exchange for our common stock pursuant to the [Wheeler Merger] will be a taxable transaction for U.S. federal income purposes"). Plaintiffs' reference to discussion of tax treatment in Cedar's May 20 Form 14A is a red herring; that public disclosure did not discuss the tax treatment of either the asset sale or merger. Rather, as discussed in Cedar's Opposition, Cedar disclosed the risk that, *if Plaintiffs were to succeed in obtaining an injunction to prevent the distribution of the proceeds from the Grocery-Anchored Portfolio Sale*, such an injunction could impact Cedar's qualification as a REIT and have significant tax implications for the Company. *See* Opp. at 32-35; 5/20/22 Form 14A (Luz Ex. 5) ("A failure to timely distribute proceeds [from the asset sale] would result in imposition of corporate level tax, excise taxes and other penalties that would be significantly value-destructive for the Company and all its stakeholders.").[7]

There is also no reason to believe that the board minutes will show that Cedar and its directors were motivated to enter either of the transactions to injure the Preferred Stockholders' contractual rights, as Plaintiffs suggest. And, for the reasons discussed in Cedar's Opposition, the fact that the transactions were not affirmatively structured to trigger either the Preferred

---

[7] Moreover, no language in § 4 of the Articles suggests that the tax treatment of the transactions would have any bearing on whether the transactions constitute a liquidation.

Stockholders' liquidation preference or the conversion rights—which is not in dispute—is entirely consistent with the rights and obligations articulated in the Articles. Opp. at 22-25. Despite the lack of relevance to the PI Motion, Cedar would be willing to produce those non-privileged portions of Cedar's board minutes between June 3, 2021 and March 1, 2022 that specifically discuss the rights of the Preferred Stockholders in the context of a potential strategic transaction, including the Grocery-Anchored Portfolio Sale and Wheeler Merger, subject to an appropriate confidentiality stipulation and order.

Finally, the Plaintiffs have requested the disclosure schedules to the Merger Agreement. Plaintiffs' disbelief that the schedules were not attached to the Proxy is misplaced, as the SEC regulations do not require schedules (which contain sensitive, confidential business information including rent rolls, etc.) to be publicly filed. *See* 17 C.F.R. § 229.601(a)(5) ("Schedules (or similar attachments) to the exhibits required by this Item are not required to be filed provided that they do not contain information material to an investment or voting decision and that information is not otherwise disclosed in the exhibit or the disclosure document."). While Cedar maintains that the information contained in the schedules is irrelevant to the issues before the Court at the preliminary injunction hearing, *see supra* at 8-12, Cedar recognizes that the schedules are a part of the Merger Agreement, which Cedar relies on to show that Cedar will continue to exist after being acquired by a company that will continue to have common stock traded on NASDAQ. For completeness, Cedar is willing to produce the disclosure schedules in advance of the preliminary injunction hearing pursuant to an appropriate confidentiality stipulation and order.[8]

---

[8] Cedar recognizes that Wheeler objects to the production of the disclosure schedules. Additionally, the requested commitment letter is a confidential document between Wheeler and KeyBank. Cedar refers the Court to Wheeler's Opposition to the Motion for Expedited Discovery for discussion of the commitment letter.

15

III.    **PLAINTIFFS HAVE NOT OTHERWISE DEMONSTRATED GOOD CAUSE FOR EXPEDITED DISCOVERY.**

Although the fact that the expedited discovery sought is both overbroad and not relevant to the preliminary injunction determination is wholly dispositive of Plaintiffs' Motion—and this Court need go no further—there are at least four additional reasons why Plaintiffs have failed to make the requisite showing of good cause: (1) Plaintiffs have not shown that they will be irreparably harmed absent expedited discovery; (2) Plaintiffs' bad faith conduct in seeking expedited discovery confirms that their Motion is nothing more than an impermissible fishing expedition; (3) Plaintiffs' requests are burdensome; and (4) none of the remaining "reasonableness factors" identified by Plaintiffs actually weigh in favor of this Court finding that good cause exists for expedited discovery.

A.    **Plaintiffs Would Not Be Irreparably Harmed In The Absence Of Expedited Discovery Prior To The Preliminary Injunction Hearing.**

In order to prevail on a motion for expedited discovery, Plaintiffs must show that they would be irreparably harmed absent the requested discovery. *See DeJoy*, 2020 WL 8413573, at *2; *Dimension Data*, 226 F.R.D. at 532; *see also NAPCO*, 555 F. Supp. 3d at 225 (courts "also look to whether the moving party would suffer irreparable harm in the absence of early discovery"). Yet Plaintiffs never argue that they would be irreparably harmed in the absence of expedited discovery. This is not surprising because Plaintiffs cannot possibly make any such showing. Plaintiffs do not identify any new or continuing harm they might suffer if they do not receive the requested discovery now and have to wait to obtain documents until ordinary course discovery. There is no allegation that the documents will no longer be available or will be destroyed in the interim, nor would such an allegation make sense. *See Dimension Data*, 226 F.R.D. at 532 ("[P]laintiff will not be irreparably harmed by engaging in standard discovery procedures as set out in the Federal Rules of Civil Procedure."). Plaintiffs also cannot show

irreparable harm for the purposes of this Motion because they cannot show irreparable harm for their underlying PI Motion. *See* Opp. at 28-31; *Davis v. Duncan Energy Partners L.P.*, 801 F. Supp. 2d 589, 596–98 (S.D. Tex. 2011) (denying expedited discovery in the context of a merger transaction where plaintiffs cannot show irreparable harm because plaintiffs can pursue money damages after the merger).

### B.    Plaintiffs' Conduct In Seeking Expedited Discovery From Defendants Defeats Any Showing Of Good Cause.

Plaintiffs' conduct to date in pursuing expedited discovery from Defendants further undermines their claim to good cause. From the outset, Plaintiffs have offered shifting and inconsistent rationales for the timing and sequencing of their serial motions and have failed to prosecute this case in a manner that suggests there is a real concern of irreparable harm. But what remains consistent is Plaintiffs' failure to meet and confer with Defendants in good faith in connection with their discovery requests as required by the applicable rules. At no point was this more apparent than when Plaintiffs filed this Motion less than 48 hours after first requesting four of the five categories of documents Plaintiffs now seek from Defendants, and without waiting to receive Defendants' position on those same categories of documents. Krulak Decl. ¶ 15. Plaintiffs' failure to meet and confer in good faith before bringing this Motion should bar them from receiving the requested relief. *See Mezu v. Morgan State Univ.*, 269 F.R.D. 565, 585 (D. Md. 2010) (refusing to consider motion to compel when counsel failed to meet and confer in advance of the motion); *see also* Md. Local R. 104.7 ("Counsel shall confer with one another concerning a discovery dispute and make sincere attempts to resolve the differences between them.").

Plaintiffs' supposed urgency in bringing this Motion also is not credible. Nothing changed between this Court's denial of the Plaintiffs' original motion for expedited discovery and the filing of this Motion. Plaintiffs approached Cedar about expedited discovery only two days after this

Court denied their original motion, and before Cedar filed its Opposition. Plaintiffs then filed this Motion the day after Cedar filed its Opposition, but evidently without taking any time to tailor their discovery requests to the actual arguments made by Cedar. In fact, Plaintiffs' Motion makes only a single passing reference to Cedar's Opposition and does not seek discovery related to any issue or argument raised by Cedar. *See* Mot. at 7.

The only justification offered by Plaintiffs for their decision to file when they did is that they conducted "additional research concerning Fourth Circuit law concerning injunctive relief and expedited discovery," which led them to conclude that the proper course of action was to file a motion for expedited discovery after they filed their PI Motion. Mot. at 2. But this is no justification at all. District courts have broad discretion when it comes to setting discovery schedules. *See Hinkle v. City of Clarksburg*, 81 F.3d 416, 426 (4th Cir. 1996) ("District courts enjoy nearly unfettered discretion to control the timing and scope of discovery."). And this Court specifically instructed Plaintiffs to wait until their preliminary injunction reply brief to raise any renewed requests for expedited discovery. Plaintiffs' independent legal research is not a reason to ignore the Court's proscribed timetable. Had Plaintiffs waited until their reply brief to renew their requests for expedited discovery as the Court instructed them to do, that would still be consistent with the purported "proper sequence in the Fourth Circuit." Mot. at 2. Failure to do so is not a harmless infraction—had Plaintiffs waited to engage in a meaningful meet and confer and review Cedar's Opposition before initially seeking discovery from Defendants and/or filing this Motion, they potentially could have significantly narrowed the scope of (or totally obviated) the dispute before the Court. Instead, Plaintiffs' course of conduct corroborates the fact that their Motion is not tailored to the needs of the preliminary injunction hearing but is instead an impermissible fishing expedition meant to harass and impose unnecessary costs and burdens on the Defendants.

### C.      The Expedited Requests Are Burdensome.

Plaintiffs assert that their expedited discovery requests "will pose minimal burden to Defendants since all of the Requested Documents are readily available." Mot. at 11. But Plaintiffs discount the burden associated with collecting and producing the requested documents on an expedited schedule. In addition to the burden of reviewing each requested document for potential privilege and the costs related to production, the data room that housed Cedar's diligence materials was operated by Bank of America, a non-party, and is no longer active. Cedar and Bank of America would have to undertake efforts to reactivate, collect, and produce the 12,000 documents from the data room, many of which are irrelevant to any issue in this case. In addition, the data room materials, as well as other documents requested by Plaintiffs, contain the confidential information of numerous third parties and were only made available to potential bidders who signed a very restrictive non-disclosure/confidentiality agreement. Before Cedar could re-produce those materials in this litigation, it would need to analyze whether it owes any obligations to those third parties, including whether it would need to provide advance notice of disclosure or to move for the entry of an appropriate confidentiality stipulation and order. It would also need to analyze, document-by-document, whether the data room materials are relevant to the issues in the litigation. Many of the other documents requested—including the disclosure schedules, commitment letter, and board minutes—are likewise confidential and contain highly sensitive Cedar business information. The unnecessary injection of confidential documents into the preliminary injunction hearing will pose logistical issues for the upcoming hearing.[9]

---

[9] Relative lack of burden alone is not a reason to order production, and even the cases cited by Plaintiffs establish that in addition to imposing little burden, expedited discovery requests must also be narrowly tailored to a proper purpose. *See Chevron Mining v. Skanska United States Civil W. Rocky Mt. Dist.*, 2019 U.S. Dist. LEXIS 237694, at *13 (N.D. Cal. Sep. 3, 2019) (ordering expedited discovery, in part, because plaintiffs were seeking a narrow set of documents relevant to imminent deadlines in an ongoing arbitration); *Semitool, Inc. v. Tokyo Electron Am., Inc.*, 208

**D.     The Other So-Called "Reasonableness Factors" Cited By Plaintiffs Do Not Support A Finding Of Good Cause.**

Finally, Plaintiffs' remaining arguments based on the *NAPCO* "reasonableness factors" fare no better. Plaintiffs assert that their pending PI Motion weighs in favor of granting their request for expedited discovery. Mot. at 5-6. While it is true that courts will sometimes grant expedited discovery so that a party may prepare for a preliminary injunction hearing, the mere fact that Plaintiffs have filed a motion for preliminary injunction does not entitle them to expedited discovery. *See, e.g.*, *L'Occitane*, 2009 WL 3746690, at *2 (denying expedited discovery where motion for preliminary injunction was pending); *Oce N. Am.*, 2010 WL 11553001, at *1 (same); *Lewis v. Alamance Cnty.*, 2015 WL 2124211, at *3 (M.D.N.C. May 6, 2015) (same). Plaintiffs still must establish that their expedited discovery requests are "narrowly tailored to obtain information relevant to a preliminary injunction determination," which they have not done. *L'Occitane*, 2009 WL 3746690, at *2 (denying request for expedited discovery because plaintiffs failed to "demonstrate how the discovery will provide evidence to establish the likelihood of the irreparable harm alleged by Plaintiff"); *see also Oce N. Am.*, 2010 WL 11553001, at *1 (denying expedited discovery request because "such discovery is not necessary on an expedited basis to prepare for a preliminary injunction hearing"); *Lewis*, 2015 WL 2124211, at *3 ("Nor do Plaintiff's discovery requests appear targeted at gathering information relevant to showing irreparable harm, or otherwise tailored toward obtaining a preliminary injunction.").

Likewise, Plaintiffs contend that expedited discovery is appropriate because "there is nearly a month left until the hearing on the Injunction Motion." Mot. at 12. But Plaintiffs have

---

F.R.D. 273, 277 (N.D. Cal. 2002) (ordering limited expedited discovery because of low burden and because plaintiff had "made a clear showing that the narrow categories of documents and physical inspection of the device not otherwise accessible will substantially contribute to moving this case forward").

20

either misstated or misapprehended the law on this point. As the *NAPCO* court explained, this factor relates to "how far in advance of *the typical discovery process* the request is made," *NAPCO*, 555 F. Supp. 3d at 225, not how far in advance of the preliminary injunction hearing the request is made.[10] In any event, this Court established a clear timetable for Plaintiffs to seek expedited discovery if they determined it was absolutely necessary for the preliminary injunction hearing. Plaintiffs' failure to comply with that timetable by prematurely filing this Motion should not weigh in favor of granting their request for expedited discovery.

## CONCLUSION

For the foregoing reasons, the Court should deny Plaintiffs' Renewed Motion for Expedited Discovery.

---

[10] The other cases cited by Plaintiffs on this point are likewise inapposite. *See KPM Analytics N. Am.,* 530 F. Supp. 3d at 146 (ordering only limited expedited discovery because plaintiffs' request "would impose an unfair burden on Defendants by frontloading the discovery process . . . [and] goes beyond what is needed for Plaintiff to supplement its brief in support of preliminary injunction"); *Entm't Tech. Corp. v. Walt Disney Imagineering*, 2003 U.S. Dist. LEXIS 19832, at *14 (E.D. Pa. Oct. 2, 2003) (denying expedited discovery even though the expedited discovery request had not been made "too far in advance of the start of formal discovery").

Dated: June 2, 2022                         By:   _/s/ William M. Krulak, Jr._____

William M. Krulak, Jr. (Fed. Bar No. 26452)
Megan J. McGinnis (Fed. Bar No. 12810)
MILES & STOCKBRIDGE P.C.
100 Light Street
Baltimore, Maryland 21202
T/F: 410-385-3727
wkrulak@milesstockbridge.com
mmcginnis@milesstockbridge.com

Joshua R. Chazen (Fed. Bar No. 06837)
MILES & STOCKBRIDGE P.C.
11 North Washington Street
Rockville, Maryland 20850
T/F: 202-465-8388
jchazen@milesstockbridge.com

Douglas H. Flaum (*pro hac vice pending*)
GOODWIN PROCTER LLP
The New York Times Building
620 Eighth Avenue
New York, NY 10018-1405
Telephone: (212) 813-8800
Facsimile: (212) 355-3333
dflaum@goodwinlaw.com

Jennifer Burns Luz (admitted *pro hac vice*)
GOODWIN PROCTER LLP
100 Northern Avenue
Boston, MA 02210
Telephone: (617) 570-1000
Facsimile: (617) 523-1231
jluz@goodwinlaw.com

*Counsel for Defendants Cedar Realty Trust, Inc.,*
*Cedar Realty Trust Partnership, L.P., Bruce J.*
*Schanzer, Gregg A. Gonsalves, Abe Eisenstat,*
*Steven G. Rogers, Sabrina Kanner, Darcy D.*
*Morris, Richard H. Ross, and Sharon Stern*