# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| DAVID SYDNEY, et al., Individually and On Behalf of All Others Similarly Situated,<br><br>*Plaintiffs*,<br><br>v.<br><br>CEDAR REALTY TRUST, INC., et. al.,<br><br>*Defendants*. | Case No.: 8:22-cv-1142-GLR<br><br>REPLY MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS' MOTION FOR EXPEDITED DISCOVERY |

**INTRODUCTION**

In opposing Plaintiffs' Motion for Expedited Discovery (the "Motion"), Defendants evidently have elected to pursue a strategy to distract and delay. Defendants seek to distract this Court from the merits of Plaintiffs' Motion by posing red herring arguments and emphasizing the unusual procedural posture of this case, of which they themselves are largely the cause. They also seek to delay production of core documents that would assist the Court in making key findings of fact on Plaintiffs' pending motion for a preliminary injunction (the "PI Motion"), such as the value and cash flow of the properties to be transferred to Wheeler in connection with the proposed Merger.[1] Defendants' arguments fail, and this Court should allow expedition.

Plaintiffs have litigated this matter as aggressively and urgently as possible. However, a delay in obtaining an assignment to the Montgomery County Circuit Court's Business and Technology Track, and Defendants' own maneuvers have forced Plaintiffs to pursue the instant Motion. On April 12, 2022, Plaintiffs filed their Class Action Complaint with the Circuit Court, and on April 21, 2022, filed their Motion to Expedite Discovery (the "Original Motion to Expedite") along with a Motion to Assign Case to Business & Technology Program (the "B&T Motion").

On April 21, 2022, Cedar filed its Proxy with the SEC. Therein, Cedar disclosed some of the contents of Plaintiffs' Class Action Complaint. Additionally, in response to the allegation in the initial complaint that Cedar would lose its Charter through the Wheeler Merger, the Proxy disclosed that Cedar had amended Section 2.4(a) of the WMA to keep its Charter after the Wheeler Merger. *Id*. at B-69. On May 5, 2022, all Defendants except Wheeler filed a line joining Plaintiffs'

---

[1] Unless otherwise noted, all capitalized terms herein shall denote the meanings assigned to them in the Amended Complaint. Dkt. 4. Unless otherwise noted, all internal citations and quotations are omitted, and all emphases in quotes are added.

1

Motion to Assign Case to Business & Technology Program. On May 6, 2022, counsel for all parties met and conferred to discuss Plaintiffs' anticipated motion for preliminary injunction. During this meet and confer, Defendants notably omitted the fact that they intended to remove the case to federal court. That same day, Wheeler filed a line joining Plaintiffs' Motion to Assign Case to Business & Technology Program, and after having conferred with Defendants' counsel, Plaintiffs filed their Amended Class Action Complaint, Motion for Preliminary Injunction, and corresponding papers in the Circuit Court. Late in the afternoon, counsel for Cedar and the Board Defendants informed Plaintiffs' counsel that they would review the preliminary injunction papers over the weekend and "then will be back to [Plaintiffs' counsel] to work out a schedule for responses/hearing."

Without warning, on May 11, 2022, within hours after a judge in the Montgomery County Circuit Court Business & Technology program was assigned to the case, Defendants removed the case to federal court.

In short, since this litigation began, Defendants have endeavored to obstruct and delay Plaintiffs' efforts to obtain expedited discovery regarding the Proposed Transaction. Nevertheless, on May 18, 2022, counsel for Plaintiffs sent Defendants an updated request for expedited discovery, which was narrowly tailored to just two depositions and readily available documents. On May 19, 2022, counsel for Defendants informed counsel for Plaintiffs that they would send a response the next day. On May 20, 2022, Defendants responded to Plaintiffs' expedited discovery request stating, "[w]e have had a chance to review your correspondence and ***do not believe that any discovery is appropriate in this matter at this stage***." The parties subsequently met and conferred by phone on May 25, 2022, during which Cedar restated its opposition to expedited discovery as untimely and unwarranted. Having once again refused Plaintiffs request for narrowly

2

tailored expedited discovery, Defendants' left Plaintiffs with no choice but to promptly pursue the instant Motion. For the reasons stated herein, this Court should grant expedition.

## ARGUMENT

### I. THIS COURT SHOULD PERMIT EXPEDITED DISCOVERY BECAUSE PLAINTIFFS SATISFY <u>ALL</u> THE REASONABLENESS FACTORS.

Courts often look to five reasonableness factors to determine whether good cause exists for expedited discovery: "'(1) whether a motion for preliminary injunction is pending, (2) the discovery request's breadth, (3) the purpose for requesting expedited discovery, (4) the burden on the defendant to comply with the requested discovery, and (5) how far in advance of the typical discovery process the request is made.'" *E.g., Napco, Inc. v. Landmark Tech. A, LLC*, 555 F. Supp. 3d 189, 225 (M.D.N.C. 2021) (internal quotation omitted). Plaintiffs need not satisfy each factor to be allowed expedited discovery. *See e.g., Garnett v. Zeilinger*, 2017 U.S. Dist. LEXIS 231397, at*5-6 (D.D.C. Dec. 15, 2017) (granting expedited discovery when only some of the factors weighed in favor of plaintiff). Here, all five factors weigh in favor of Plaintiffs.

Here, all of these factors strongly support the limited expedited discovery requested by Plaintiffs. Specifically: (1) a preliminary injunction is pending; (2) Plaintiffs' requests are limited to a narrowly tailored list of documents that are readily available; (3) the purpose of the expedited discovery is to afford Plaintiffs and the Court the information necessary to ascertain crucial facts concerning the Wheeler Properties' value and expected cash flows, as well as Defendants' intentions and motivations in structuring the Proposed Transactions; (4) Plaintiffs' requests impose a limited burden on Defendants; and (5) Plaintiffs timely pursued the expedited discovery and have been seeking production of these documents since the outset of litigation. Accordingly, it is appropriate for the Court to order Defendants to produce the requested documents on or before June 15, 2022.

### A. The First Factor Shows That Expedited Discovery is Particularly Appropriate Because Plaintiffs Have Filed a Preliminary Injunction Motion

In seeking to block this Court and Plaintiffs from a proper factual record for the preliminary injunction hearing, Defendants—attempting to spin *ad hominem* attacks to salvage the Proposed Transactions—ignore the law in this Circuit that expedited discovery is "particularly appropriate" because Plaintiffs' motion for preliminary injunction is pending. Dkt. No. 32-1, p.9; *see e.g., Palermo v. Underground Solutions, Inc*., 2012 U.S. Dist. LEXIS 80616, at *4-5 (S.D. Cal. June 11, 2012) ("In cases where preliminary injunction motions are pending, courts often permit expedited discovery designed to obtain information required for the preliminary injunction."); *CIENA Corp. v. Jarrard*, 203 F.3d 312, 315 (4th Cir. 2000) (remanding to give the defendant an opportunity to conduct expedited discovery in advance of district court's reconsideration of preliminary injunction motion); *see also Dan River, Inc. v. Unitex, Ltd*., 624 F.2d 1216 (4th Cir. 1980) (describing expedited discovery in the district court as preparation for preliminary injunction hearing). Here, Plaintiffs' preliminary injunction motion is obviously pending, thus making it "particularly appropriate" for this Court to allow expedited discovery for the preliminary injunction hearing.

### B. The Second Factor Favors Allowing Expedited Discovery Because the Requested Documents are Narrowly Tailored

Plaintiffs seek a narrowly tailored list of documents that are readily available to Defendants and could be produced on an expedited basis. Specifically, Plaintiffs are seeking (i) the Company Disclosure Schedule (as defined in the Wheeler Merger Agreement); (ii) the Commitment Letter (as defined in the Wheeler Merger Agreement); (iii) due diligence materials provided to bidders via the online data room referenced in the Proxy; (iv) materials sufficient to ascertain how Defendants are treating the Proposed Transactions for tax purposes; and (v) minutes of all board

and committee meetings in which the transaction which form the subject matter of this litigation were discussed or considered.

Despite opposing Plaintiffs' Motion, the Cedar Defendants have already expressed a willingness to produce a majority of the requested documents. As articulated in the Cedar Defendants' Opposition, Defendants are willing to produce those non-privileged portions of Cedar's board minutes between June 3, 2021 and March 1, 2022 that specifically discuss the rights of the Preferred Stockholders in the context of a potential strategic transaction, including the Grocery-Anchored Portfolio Sale and Wheeler Merger, subject to an appropriate confidentiality stipulation and order. Cedar Opp. at 15. Additionally, the Cedar Defendants have also stated that they are willing to produce the disclosure schedules in advance of the preliminary injunction hearing. *Id*. Finally, Defendants have directed Plaintiffs to the location of certain materials sufficient to ascertain how Defendants are treating the Proposed Transactions for tax purposes. Accordingly, despite opposing Plaintiffs' Motion, the Cedar Defendants are now, finally, willing to produce a portion of the requested documents.  The Court should thus order the Cedar Defendants to produce those documents by no later than June 15, 2022.

However, Defendants apparently draw the line on producing documents that are contained within a previously constituted online data room. Moreover, Wheeler opposes production of the Commitment Letter from KeyBank.

In refusing to produce anything from the online data room, Defendants accuse Plaintiffs of conducting a fishing expedition. In support of their refusal, the Cedar Defendants cite to only a single case, *Allen v. City of Graham*. 2021 WL 2037983, at *7 (M.D.N.C. May 21, 2021). However, the circumstances in *Allen* are markedly different than those present here. *Allen* concerned an attempt by 20 individual and three organizational plaintiffs to ascertain the identities

of several anonymous police officers. A central concern in that case was the danger that unmasking the police officers' names, information, home addresses, personal telephone numbers, and personal e-mail addresses would have on those law enforcement officers and/or their families. Id. at *9. Here, there is no comparable danger. Furthermore, the procedural posture in *Allen* was completely inapposite. Unlike the situation here, there was no pending injunction motion in *Allen*. *Id*. at 6. Instead, by the time the expedited discovery motion had been filed in *Allen*, the Defendants had already filed a Motion to Dismiss and "expedited discovery is not the norm, particularly where defendants have filed a motion to dismiss." *Guttenberg v. Emery*, 26 F. Supp. 3d 88, 97 (D.D.C. 2014); *Allen,* 2021 WL 2037983, at *7. Finally, and most pertinent to the issue here, the requests in *Allen* were overly broad and burdensome, and would have required extensive search activities to produce documents pertaining to all purported instances of "use of force." *Id*. at 8.

Unlike in *Allen*, Plaintiffs are not seeking to go on a broad fishing expedition that would require a burdensome search process. Instead, Plaintiffs seek a narrowly tailored list of readily-available documents from the online data room relevant to the equity and cash flow of the Wheeler Properties that could easily be produced on an expedited basis. Defendants' objection seems to center on the fact that the data room contained approximately 12,000 documents and that the majority of these documents are unrelated to any issue in the litigation. Opp. at 13. However, the Cedar Defendants already provided the data room materials to at least thirty-six other parties (*see* Dkt No. 13-2, p.709) to use the data room materials for effectively the same purposes as Plaintiffs—to value the properties. Accordingly, Plaintiffs' requests are narrow and specifically tailored to a set of documents that are readily available to Defendants and could be produced on an expedited basis.

Finally, Plaintiffs have withdrawn their requests for depositions, even though depositions are frequently permitted during expedited discovery, thus making the requested expedited discovery even less burdensome. *See e.g., Lindsey & Osborne P'ship, L.P. v. Day & Zimmermann, Inc.*, 2008 U.S. Dist. LEXIS 60333, at *10 (D. Kan. July 22, 2008) (ordering expedited discovery that included five depositions, ten interrogatories, ten document production requests, and three subpoenas); *KPM Analytics N. Am. v. Blue Sun Scientific, LLC*, 540 F. Supp. 3d 145, 146 (D. Mass. 2021) (ordering expedited discovery that permits plaintiff to conduct ten document requests and three depositions).

### C. The Third Factor Favors Allowing Expedited Discovery Because Plaintiffs Have a Proper Purpose

Both the Cedar Defendants and Wheeler argue that none of the requested discovery is proper or necessary for the Court to consider during the upcoming hearing on Plaintiffs' PI Motion. Instead, they incorrectly assert that all of Plaintiffs' claims are contractual in nature, and that intent and motivation have zero bearing on whether Plaintiffs are likely to prove that there was a breach of the Articles. This is simply false.

As discussed at length in Plaintiffs' prior submissions, Plaintiffs assert claims for breach of the implied duty of good faith and fair dealing and breach of fiduciary duty. These claims turn on whether Defendants have acted in bad faith with the specific intent of depriving Preferred Stockholders of their contractual rights. *See Clancy v. King*, 405 Md. 541, 954 A.2d 1092 (Md. 2008) (party breaches the duty of good faith when a significant motive for asserting contractual rights is to harm the interests of the other party to the contract); *Della Ratta v. Larkin*, 382 Md. 553, 856 A.2d 643, 657 (Md. 2004) (defendant breached fiduciary duty where a "significant motivation for . . . issuing the capital call was to squeeze out some of the limited partners" and the party "advanced the date of the capital call in order to 'out-maneuver' the Withdrawing Partners

7

and block them from exercising their statutory right to withdraw."); *Jolly Roger Fund, LP v. Prime Group Realty Trust*, 2007 Md. Cir. Ct. LEXIS 10, at *17 (Md. Cir. Ct. Aug. 16, 2007) (indicating that inability to pay liquidation preference is evidence of *de facto* liquidation and/or bad faith). Here, Defendants' intent and motives are important to determine whether they structured the Proposed Transactions to circumvent their liquidation and/or change of control obligations under the Articles Supplementary and thereby harm the Preferred Stockholders.[2]

Defendants have claimed in their SEC filings—and now in documents before this Court—that the Wheeler Merger (and thus the Wheeler Properties) are worth $ 291.3 million, *i.e.*, that the equity in the Wheeler Properties is adequate to cover the Liquidation Preference and that the cash flow from the Wheeler Properties is adequate to pay the annual preferred dividends. For example, the Cedar Defendants have indicated that the Wheeler Properties are worth $291.3 million by stating that the "merger" or "merger partner value the Wheeler Properties at $291.3 million[3]:

- "Wheeler will acquire the balance of the Company's shopping center assets by way of an all-cash merger transaction that values the remaining portfolio at $291.3 million." Dkt No. 13-2, p. 52 (emphasis added).

---

[2] The Cedar Defendants attempt to block expedited discovery by claiming that the Cedar Board of Directors do not owe fiduciary duties to their Preferred Stockholders. This is a blatant misstatement of Maryland law. In fact, the Preferred Stockholders are owed fiduciary duties by the Cedar Defendants. *See e.g., Leviness v. Consol. Gas, Elec. Light & Power Co. of Baltimore*, 80 A. 304, 306 (Md. 1911); *Plank v. Cherneski*, 231 A.3d 436, 465 (Md. 2020); *see also Blue Chip Cap. Fund II Ltd. P'ship v. Tubergen*, 906 A.2d 827, 834 (Del Ch. 2006) (holding only that a preferred stockholder is not entitled "to a larger distribution of the proceeds," not that fiduciary duties permit a corporation to divert all proceeds to common stockholders and none to preferred stockholders); *Frederick Hsu Living Tr. v. ODN Holding Corp.*, No. CV 12108-VCL, 2017 WL 1437308, at *24 (Del. Ch. Apr. 14, 2017) (The "fact that a corporation is bound by its valid contractual obligations does not mean that a board does not owe fiduciary duties when considering how to handle those contractual obligations."); *In re FLS Holdings, Inc. S'holders Litig.*, No. CIV. A. 12623, 1993 WL 104562, at *5 (Del. Ch. Apr. 2, 1993) (declining to dismiss breach of fiduciary duty claim where "no mechanism employing a truly independent agency on the behalf of the preferred was employed before the transaction was formulated.").

[3] These claims are also misleading because they ignore Wheeler's history of destroying its preferred stock rights to extract the preferred stock value and ability to retire the Preferred Stockholders at deep discount through a tender offer.

8

- "[A]fter completion of the above-described transactions, in an all-cash <u>merger transaction that values the assets at $291.3 million</u>." Dkt. No. 13-2, p.59 (emphasis added).

- "Wheeler will acquire the Company and the remainder of the Company's shopping center assets by way of an all-cash <u>merger transaction that values the remaining portfolio at $291.3 million</u>." Dkt No. 13-2, p. 681 (emphasis added).

- The post-Merger Company is "<u>valued by the merger partner</u> at over $291 million . . . ." Dkt No. 30, p.7 (emphasis added).

- "Cedar will then engage in an all-cash <u>reverse merger</u> with Wheeler <u>that values Cedar's remaining assets at $291.3 million</u> . . . ." Dkt. No. 30, p.13 (emphasis added).

Plaintiffs have a right to test these assertions, and the documents requested are intended to assess the accuracy of those representations. To the extent they show that Defendants have misrepresented the equity and cash flow in the Wheeler Properties, the evidence of Defendants' bad faith will be that much stronger. Thus, all of the Requested Documents are readily available materials that will provide the Court with critical information concerning the equity and cash flow of the Wheeler Properties, which directly relate to the merits of Plaintiffs' claims for breach of the implied duty of good faith and fair dealing and breach of fiduciary duty.

**D. The Fourth Factor Favors Allowing Expedited Discovery Because the Requested Documents Are Readily Available.**

Plaintiffs only request (i) the Company Disclosure Schedule (as defined in the Wheeler Merger Agreement); (ii) the Commitment Letter (as defined in the Wheeler Merger Agreement); (iii) due diligence materials provided to bidders via the online data room referenced in the Proxy ; (iv) materials sufficient to ascertain how Defendants are treating the Proposed Transactions for tax purposes; and (v) minutes of all board and committee meetings in which the transaction which form the subject matter of this litigation were discussed or considered.

Here, Defendants cannot (and do not) dispute that the documents (i), (ii), (iii), and (v) are readily available, and only dispute whether (iv), the due diligence materials, are readily available. In that regard, Defendants note that the materials in the data room were already provided to "potential bidders" and claim the data room is "no longer active."[4] Indeed, the Cedar Defendants already provided the data room materials to at least thirty-six parties (*see* Dkt. No. 13-2, p.709), so they cannot credibly argue that these documents are not readily available and reasonable to produce. There is no evident reason why Cedar could not reactive the data room and transfer the documents once restored, a simple task compared to typical document productions.[5]

### E. The Fifth Factor Favors Expedited Discovery Because Plaintiffs Moved Well in Advance of the Preliminary Injunction Hearing.

The fifth factor is "how far in advance of the typical discovery process the request is made." *Napco*, 555 F. Supp. 3d, at 225. In light of the significant role that the limited discovery will play in assisting the Court in resolving the pending PI Motion, it is reasonable to grant Plaintiffs' request despite the early phase of this case.

---

[4] If the Court somehow concludes that Plaintiffs' request for the data room materials are too broad, Plaintiffs humbly suggest that the Court could instead permit expedited discovery for a limited subset of the documents that would be specifically relevant to the value of, and cash flow from, the Wheeler Properties.

[5] The United States District Court of Maryland approves expedited discovery for documents that require much more efforts to assemble than the efforts sufficient to restore a data room. *See e.g., Blades of Green, Inc. v. Go Green Lawn & Pest, LLC*, 2022 U.S. Dist. LEXIS 19699 (D. Md. Feb. 3, 2022) (permitting expedited discovery for, among other documents, "[a]ll documents related to Plaintiff's customer lists, customer information, employee lists, operating procedures, onboarding procedure, collection procedures, playbooks, advertising material, employee incentive programs, pay rates, fee schedules, templates, customer service scripts, training checklists, budget billing documents, and training manuals."); *see also Semitool, Inc. v. Tokyo Electron Am., Inc.*, 208 F.R.D. 273, 277 (N.D. Cal. Apr. 19, 2002) (permitting expedited discovery in part even though "Defendants claim some logistical inconvenience in responding to the request inasmuch as most of the documents are located in Japan and many may be in Japanese").

Rule 26 of the Federal Rules of Civil procedure requires that "the parties must confer as soon as practicable – and in any event at least 21 days before a scheduling conference is to be held or a scheduling order is due under Rule 16(b)." *See* Fed. Rules Civ. Proc., Rule 26(f)(1). Rule 16(b)(2) requires issuance of a scheduling order as "soon as practicable" and unless there is good cause for delay, "the judge must issue it within the earlier of 90 days after any defendant has been served with the complaint or 60 days after any defendant has appeared." As Defendants transferred this case to Federal Court on May 2, 2022, a scheduling order is due within 60 days or July 1, 2022. Rule 26(f)(1) requires that the discovery conference be held "at least 21 days earlier". *See* Fed. Rules Civ. Proc., Rule 26(f)(1). Accordingly, under the applicable rules the discovery conference would be required in short order anyway. *See* Fed. Rules Civ. Proc., Rule 26(f)(1); Fed. Rules Civ. Proc. Rule 16(b)(2). Accordingly, Plaintiffs are seeking expedited discovery of documents only a short while before they would have typically been permitted to make these requests.[6]

More to the point, Plaintiffs have been seeking production of these documents for nearly two months, since April 21. Defendants' efforts to delay and distract should not be rewarded. Running out the clock with procedural maneuvers is not something this Court should encourage. Moreover, to the extent that Defendants argue that Plaintiffs have not been diligent in seeking these documents, or have somehow not properly met and conferred, such arguments are absolutely groundless.  Plaintiffs aggressively sought a briefing schedule and a hearing on the Original

---

[6] Attempting to box out this Court from applying the appropriate Fourth Circuit expedited discovery precedent, Defendants misunderstand this Court's order that denied Plaintiffs' expedited discovery as "without prejudice as moot" because Plaintiffs had sought "expedited discovery in anticipation of, and to facilitate, the timely filing of a motion for an injunction." Dkt. No. 15, p.2 (internal quotation omitted). This Court's order did not prohibit Plaintiffs from expedited discovery to prepare for a preliminary injunction hearing.

Motion to Expedite in the Montgomery County Circuit Court. When Plaintiffs were finally on the verge of getting that schedule – and, tellingly, not before – Defendants removed the case to this Court, thereby allowing them to burn more time before the matter could be considered.

And with regard to Mr. Krulak's assertions concerning the meet and confer process, his declaration is, at best, wildly misleading. In reality, during the meet and confer call on May 25, counsel for Plaintiffs explicitly asked if Defendants were rejecting the requested expedited discovery in total. Mr. Krulak explicitly confirmed that they had rejected and were continuing to reject Plaintiffs' requested expedited discovery. In response, counsel for Plaintiffs explicitly advised Defendants' counsel that, in light of the limited time before the upcoming preliminary injunction hearing, Defendants left Plaintiffs no choice but to proceed to file the instant Motion, but would welcome any further response from them. Mr. Krulak explicitly stated that he understood and thought that was a reasonable manner in which to proceed. It is further worth noting that, other than their opposition briefs, no further response has been forthcoming from Defendants.

**F. Expedited Discovery Will Prevent Plaintiffs From Suffering Irreparable Harm**

The transaction is set to close after close of business on June 24, 2022. Among the factors that can be relevant to the court's determination of whether a party is entitled to conduct expedited discovery is whether the party will suffer irreparable harm by being required to wait until after the Rule 26(f) conference to conduct discovery. *See Dimension Data N. Am., Inc. v. NetStar-1, Inc.*, 226 F.R.D. 528, 532 (E.D.N.C. 2005).[7] As detailed above, the only direct evidence in the record

---

[7] This Court can also permit expedited discovery without regard to this inquiry. *See e.g., Cooke v. Lancelotta,* 2022 U.S. Dist. LEXIS 37654 (D. Md. Mar. 3, 2022); *Blades of Green, Inc. v. Go Green Lawn & Pest, LLC,* 2022 U.S. Dist. LEXIS 19699, at *32-33 (D. Md. Feb. 3, 2022); *Garnett v. Zeilinger*, 2017 U.S. Dist. LEXIS 231397 (D.D.C. Dec. 15, 2017); *Nicklas Assocs. v. Zimet*,

concerning the value of the Wheeler Properties comes from Party C's all-cash bid, which reveals that the Wheeler Properties are only worth $240 million. Based on this calculation, there would only be $110 million of equity (after deducting the $130 million KeyBank loan) to contribute towards the $161.3 million Liquidation Preference if Plaintiffs prevail. Accordingly, if the Gross Proceeds are not escrowed, and Plaintiffs later prevail, Plaintiffs will be left with the impossible task of commencing clawback actions to recover wrongful distributions from Common Stockholders.

Here, Plaintiffs need the documents prior to the Preliminary Injunction hearing to test the accuracy of Defendants' representations regarding the equity and cash flow of the Wheeler Properties. Defendants have refused requests to further delay the date the transaction closes and/or the hearing date on the injunction. *See ForceX, Inc. v. Tech. Fusion, LLC*, No. 4:11CV88, 2011 WL 2560110 (E.D. Va. June 27, 2011); *cf. Kia Motors Am., Inc v. Greenbrier GMC, Inc.*, No. 2:20CV428 (RCY), 2020 WL 8970813, at *3 (E.D. Va. Dec. 11, 2020) ("Indeed, KMA's willingness to delay the preliminary injunction hearing suggests that it will not "suffer irreparable harm" in the absence of expedited discovery."). Accordingly, if Plaintiffs do not receive these documents prior to the injunction hearing, they will be irreparably harmed as they will be unable to properly value the Wheeler Properties prior to the injunction hearing and any future recovery, should Plaintiffs later prevail, will force Plaintiffs to attempt to clawback these wrongful distributions from the Common Stockholders.

---

2014 U.S. Dist. LEXIS 170071 (D. Md. Dec. 9, 2014); *Nutrition & Fitness, Inc. v. Progressive Emu, Inc.*, 2012 U.S. Dist. LEXIS 59085 (E.D. N.C. Apr. 27, 2012).

## II.     THE COURT SHOULD SET A PRODUCTION DEADLINE OF JUNE 15, 2022

In the Fourth Circuit, expedited discovery is appropriate after a plaintiff has filed a motion for preliminary injunction and needs to prepare for a scheduled preliminary injunction hearing. *See e.g., CIENA Corp. v. Jarrard,* 203 F.3d 312, 315 (4th Cir. 2000) (remanding to give the defendant an opportunity to conduct expedited discovery in advance of district court's reconsideration of preliminary injunction motion); *Dan River, Inc. v. Unitex, Ltd.*, 624 F.2d 1216, 1220 (4th Cir. 1980) (noting that the district court "set a hearing on the motion for a preliminary injunction and directed the parties to engage in discovery on an expedited basis prior to that hearing"). Plaintiffs motion for a preliminary injunction was fully briefed on June 3, 2022, and a hearing is currently set for June 22, 2022. Accordingly, there is already a limited window for Plaintiffs to receive these documents prior to the forthcoming hearing.

As detailed above, Defendants own actions and procedural issues at the state court level have delayed and deferred resolution of Plaintiffs' efforts to seek expedited discovery. As the hearing on Plaintiffs' Motion is scheduled for June 22, 2022, Plaintiff respectfully requests that the court set the deadline for Defendants' production for no later than June 15, 2022, to permit Plaintiff with a week's time to review the documents and prepare to present evidence drawn therefrom at the PI Motion hearing.

## CONCLUSION

For the reasons set forth herein, the Court should grant the Motion and order production of the requested materials by no later than June 15, 2022.

Dated: June 6, 2022

Respectfully submitted,

*/s/ Donald J Enright*
Donald J. Enright (Bar Number: 13551)
Jordan A. Cafritz (Bar Number: 20908)
**LEVI & KORSINSKY LLP**
1101 30th Street, NW, Suite 115
Washington, DC 20007
Telephone: (202) 524-4290
denright@zlk.com

OF COUNSEL:

**WOHL & FRUCHTER LLP**
Joshua E. Fruchter
25 Robert Pitt Drive, Suite 209G
Monsey, NY 10952
Telephone: (845) 290-6818
Facsimile: (718) 504-3773

*Counsel for Plaintiffs and [Proposed] Lead Counsel for Putative Class*

*Attorneys for Plaintiffs*

**CERTIFICATE OF SERVICE**

I hereby certify that on June 6, 2022, service required by Fed. R. Civ. P. 5(a) has been made of the foregoing Reply Memorandum of Law in Support of Plaintiffs' Motion for Expedited Discovery.

*/s/ Donald J. Enright*
(Bar. No. 13551)
